**Noel Slapp**
Capitol Hill,
Post Office Box 3 CHRB
Saipan, MP96950
Tel. No. 670/234-9511
E-mail: alliedmse@itecnmi.com
Plaintiff, *pro-se*

F I L E D
Clerk
District Court

OCT 26 2012

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# UNITED STATES DISTRICT COURT

## FOR THE

### NORTHERN MARIANA ISLANDS   CV   1 2 - 0 0 0 2 8

| | |
|---|---|
| **NOEL SLAPP,** ) | Civil Case No. 12-_____ |
| ) | |
| **Plaintiff,** ) | **COMPLAINT FOR** |
| ) | **1. Violations of the Racketeer Influenced** |
| **-vs-** ) | **Corrupt Organisations Act (RICO)** |
| ) | **2. Malicious Prosecution** |
| **WILLIAM E. TOELKES, INTERNATIONAL** ) | **3. Civil Conspiracy** |
| **BRIDGE AND CONSTRUCTION/MARIANAS** ) | **4. Conversion** |
| **& DOES 1-10,** ) | **5. Fraud** |
| ) | **6. Alter Ego** |
| **Defendants.** ) | |
| ) | **(JURY TRIAL DEMANDED)** |

Plaintiff, Noel Slapp, *pro se*, hereby complains of the Defendants jointly and severally as follows:

## PARTIES

1.  Plaintiff Noel Slapp is an Australian citizen and at all time relevant herein, a resident and domiciliary of the Commonwealth of the Northern Mariana Islands (hereinafter, "the CNMI"). Noel Slapp demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

2.  At all times mentioned herein, Plaintiff was and is a practicing and recognized marine surveyor who is the majority shareholder of and primary revenue earner for Allied Marine Surveyors, Ltd. (hereinafter "Allied Marine"), a corporation duly organized and existing under and by virtue of, the laws of the CNMI.   Allied Marine maintains its principal office in Garapan, Saipan.

Allied Marine is primarily engaged in the business of marine surveying, marine risk assessment, underwater inspections, repairs, salvage operations and related commercial activities. Plaintiff is also the corporate secretary of Vimar Offshore, Inc., a corporation duly organized and existing under and by virtue of the laws of the CNMI. Vimar Offshore, Inc., in turn is the owner of VT Holdings, Inc., a corporation duly organized and existing under and by virtue of the laws of Panama.

3. Defendant William E. Toelkes is a United States citizen who resides in the Territory of Guam. At all times relevant to the allegations contained herein, William E. Toelkes was an officer, director and shareholder of International Bridge and Construction/Marianas.

4. Defendant International Bridge and Construction/Marianas is a closely held corporation that is ultimately controlled by Defendant William E. Toelkes. According to the Annual Corporate Report signed on or about November 3, 2009 by William E. Toelkes for the year 2009, on file at the Guam Revenue and Taxation office, the sole shareholder, president and resident agent of International Bridge and Construction/Marianas is William E. Toelkes. International Bridge and Construction/Marianas is a corporation organized and existing under and by virtue of the laws of the CNMI.

5. Plaintiff alleges upon information and belief that Defendant International Bridge and Construction/Marianas has never had, and does not have now, a genuine corporate existence separate or indistinguishable from Defendant William E. Toelkes. Plaintiff alleges that Inter Bay Circle Marine (Guam corporation) and International Bridge Corporation (Ohio corporation), also closely held corporations that are ultimately controlled solely by William E. Toelkes, are operated through and at the whim of, Defendant International Bridge and Construction/Marianas, and that the latter is in fact being used and exists as a shadowy primary or parent company. Inter Bay Circle Marine and International Bridge Corporation now exist for the sole purpose of enabling Defendants to transact a portion of its business under alternate corporate guise while isolating Defendant William E. Toelkes' main assets (described in more detail in the Eighth Claim for Relief, ¶¶106 – 109 hereinbelow). Inter Bay Circle Marine, the owner or disponent owner of various vessels named herein below, has never

had a bank account and uses the bank accounts of Defendant International Bridge and Construction/Marianas. International Bridge and Construction/Marianas, also makes payments for the other corporations and William E. Toelkes. International Bridge and Construction/Marianas made most of the payments to Allied Marine for the maritime services described in this Complaint through its Bank of Guam, Saipan branch account number 0103-012389. Exhibit "1" was provided by William E. Toelkes and filed with the District Court of Guam (Civil Action No. 1: 11-CV-0027) in a related collection action and contains a summary of payments that Defendant International Bridge and Construction/Marianas made to Allied Marine from 1997 onwards. At all times relevant herein, International Bridge and Construction/Marianas maintained its bank account at the Saipan branch of Bank of Guam.

6. Plaintiff hereinafter refers to William E. Toelkes, International Bridge and Construction/Marianas, and Does 1-10 interchangeably and collectively as "the Defendants."

7. Plaintiff does not know the true names and capacities of Defendants DOES 1 - 10 at this time, and Plaintiff will seek leave of Court to amend this complaint to allege such names and capacities as soon as Plaintiff ascertains them.

8. Whenever Plaintiff refers to any act, deed, or conduct of "Defendants," said references mean that Defendants William E. Toelkes, International Bridge and Construction/Marianas, and Does 1-10 engaged in the acts, deeds or conduct.

9. Plaintiff is informed and believes and alleges therefore, that at all relevant times each Defendant was the agent and employee of the other Defendants, and in doing the things hereinafter alleged was acting within the course and scope of such agency and employment relationship.


## JURISDICTION AND VENUE


10. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. §1964. The Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §1961 et seq., applies to this

matter through Article V. §502(a)(2) of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America.

11. This Court has jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. §1331 (federal question jurisdiction), RICO 18 U.S.C. §§1961, 1961(c) and 28 U.S.C. §1337(a) (proceeding arising under any Act of Congress regulating commerce).

12. Jurisdiction in the CNMI is proper under 28 U.S.C. §1332 based upon the parties' diversity of citizenship. The amount in controversy exceeds $75,000.00 and is in excess of the jurisdictional minimum limit for a United States District Court.

13. Venue is properly laid in this judicial district pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391 since Plaintiff resides in the CNMI and Defendants have the requisite minimum contacts with and in this judicial district. A

## FIRST CLAIM FOR RELIEF

### AGAINST WILLIAM E. TOELKES & DOES 1-10:
#### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, (RICO)
#### CODIFIED AS TITLE IX OF THE ORGANIZED CRIME CONTROL ACT OF 1970 (18 U.S.C. §§1961-68)

### RICO VIOLATION, 18 U.S.C. §1962(b)

14. <u>Introduction</u>: This is a civil RICO claim based on at least a three year series of a continuous, interrelated, virtual kaleidoscope of nefarious predicate acts during interstate and international commerce, including fraudulent incursion of marine salvage services, fraudulent misrepresentations to the United States Coast Guard, intentionally deceptive debt claims to insurance underwriters, retaliatory malicious prosecution involving false and misleading accusations to the Republic of Korea Police, mail and wire fraud inflicting distinct racketeering injuries upon multiple victims, factually and proximately caused by violation of 48 U.S.C. §1962 by a RICO Enterprise. The Enterprise guided consistently by Defendants generally and Defendant Toelkes in particular, was used as the vehicle by which, all predicate acts were committed and which by their pattern and nature, project into the future with the threat of repetition. RICO liability is predicated upon a course of conduct by Defendant William E. Toelkes directing the Enterprise during a substantial period of time, including extensive fraudulent misrepresentations and omissions, which are predicate acts of a criminal dimension, in a complex pattern of on-going, related but separate schemes and events, the scope and persistence of which proximately caused and inflicted distinct injuries and pecuniary losses upon the Plaintiff and other victims. Some of the RICO predicate acts were committed by Defendant Toelkes' use of the Enterprise within the United States, victimizing Plaintiff, federal agency(ies) and others. Additional, but related predicate acts were committed by Toelkes in conjunction with the Enterprise in foreign jurisdictions. As hereafter alleged herein, the pattern of all domestic and International predicate acts constituted a series of related nefarious racketeering schemes defrauding its victims and deleteriously affecting American citizens and commerce within the United States.

15. The allegations of ¶¶1 - 13 hereinabove are fully incorporated herein by reference.

16. 18 U.S.C. §1962(b) makes it unlawful for any person to acquire or maintain control over an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, through a pattern of racketeering activity.

17. Defendant William E. Toelkes is the culpable person who organized, controlled and conducted the affairs of an association-in-fact qualifying as an 18 U.S.C. §1961(4) Enterprise, consisting of Defendant William E. Toelkes, Defendant International Bridge and Construction/Marianas, Robert Toelkes, William Toelkes' personal secretary Diane Mayo, William E. Toelkes' Korean legal counsel Kwang Woo Park, Inter Bay Circle Marine and Does 1-10, and engaged in the unlawful pattern of racketeering alleged herein, conducted through interstate and foreign commerce. Defendant William E. Toelkes incorporated all the companies named or described herein and maintains dominion over all of them regardless of the nominated officers, directors, shareholders and or managers.

18. William E. Toelkes through the RICO Enterprise, caused the ocean-going barge named "Martha E" and later re-flagged and re-named "Tamara V", (hereinafter variously referred to as the "Barge" or the "Vessel") to be directly engaged in transport of goods and provision of services through interstate and foreign commerce by undertaking commercial voyages between ports in Guam, the CNMI, Singapore and Indonesia and otherwise affecting interstate and international commerce, through a pattern of racketeering activity.

19. Defendant William E. Toelkes was the central figure in the illicit Enterprise racketeering scheme and enabled it to commit a pattern of predicate acts including wire fraud, mail fraud, misrepresentation and deceit resulting in multiple injuries to multiple victims between 2006 and 2011, more particularly stated as:

(a) Fradulent Inducement of Plaintiff's Services. By the predicate act of fraudulently inducing Plaintiff to spend over a year in Indonesia, repairing the Barge then named the "Martha E", and owned by Inter Bay Circle Marine. The inducement was made on the basis of a false assurance of timely payment for his services; by inducing Plaintiff to advance his own funds by falsely assuring Plaintiff of re-payment, in what amounted to an involuntary loan by Plaintiff to Defendants and an investment in the Barge forced upon Plaintiff by the Toelkes Enterprise which cheated Plaintiff out of hundreds of thousands of dollars and a

significant investment loss to Plaintiff by such misrepresentations, which Plaintiff in this lawsuit seeks to recoup. Defendant Toelkes' misrepresentations effectively put Plaintiff into the position of an involuntary investor in the "Martha E", and lender to Defendants, proximately causing direct pecuniary loss of the funds advanced by Plaintiff, and the value of his services rendered to the Barge as well as inflicting derivative injuries to Plaintiff arising therefrom.

(b) Fraudulent Inducement of Plaintiff to Effect Power of Attorney. By the dishonest deception of Defendant Toelkes, facilitated by the Enterprise, the inducement of VT Holdings to execute a Power of Attorney giving Defendant Toelkes and the Enterprise, the ability to achieve the illicit purposes of collecting an unlawful insurance debt payment, wrongful appropriation of insurance vessel repair proceeds, the wrongful purchase of salvage rights to the Vessel, and to deceptively obtain a United States Coast Guard Certificate of Financial Responsibility, in order achieve the racketeering objective of wrongfully disrupting Plaintiff's legitimate ownership rights to the Barge.

(c) Collection of Unlawful Debt. A fraudulent scheme by Defendant William E. Toelkes by means of the Enterprise, to commit the predicate act of collecting an unlawful debt from a London insurance underwriter by the additional predicate act of fraudulent inducement to disburse proceeds for the repair of the Barge, by then re-named the "Tamara V", with the intent to appropriate such debt payment for unlawful purposes;

(d) Fraudulent Inducement of Plaintiff to Effect Payment Authorization. For the illicit purpose of collecting an unlawful insurance debt payment, wrongful and clandestine appropriation of insurance vessel repair proceeds and for the surreptitious, unlawful fraudulent purchase of vessel salvage rights, the deceptive inducement of vessel owner VT Holdings, to execute a Payment Authorization to London insurance underwriters for the strict purpose of vessel repair, by the Enterprise under the direction of Defendant William E. Toelkes.

(e) <u>Defrauding the United States Government</u>.  An illicit, deceptive scheme to register the "Tamara V" with the United States Coast Guard by Defendant William E. Toelkes, utilizing the Enterprise as the vehicle for making false, unlawful and fraudulent representations and omissions in the registration application.

(f) <u>Malicious Prosecution</u>.  The spurious, surreptitious and maliciously filing of criminal charges against Plaintiff strictly in retaliation for Plaintiff's role in the legitimate sale of the "Tamara V", in Busan, Korea by means of Defendant William E. Toelkes' direction and control of the Enterprise, resulting in wrongful arrest and detention of Plaintiff until the Busan Police found the complaint against Plaintiff to be totally devoid of merit.

(g) <u>Continuing Threat of Further Illicit, Fraudulent Activity</u>.  Plaintiff is informed and believes and therefore alleges, that additional false, malicious and baseless criminal charges have again been filed against him in Busan by Defendant William E. Toelkes by means of the Enterprise and also, that Defendant William E. Toelkes' illicit racketeering through the Enterprise will project into the future by unlawful withholding of funds due Plaintiff for salvage and repair work done in Indonesia on the basis of fraudulent inducement.


COUNT ONE: <u>Fraud in the Inducement of Plaintiff's Services</u>.


19. On or about March 6, 2006, the barge "Martha E" capsized off Buru Island in Indonesia whilst engaged on a commercial voyage from Makassar, Indonesia with the loss of all cargo that was bound for a United States of America federal project on Guam. On the same day the Enterprise, directed by Defendant William E. Toelkes from Guam, utilized communication wires to fraudulently induce Plaintiff of Allied Marine in the CNMI to purchase an airline ticket with his own funds from Bank of Hawaii, Saipan branch that is engaged in interstate and foreign commerce, for immediate travel to Indonesia to attend the Vessel for the purposes of advice, salvage, assessment and repair. In essential reliance upon Toelkes' deception, Plaintiff acquiesced and remained on assignment, mostly

in Indonesia, throughout the salvage and repair of the "Martha E" until the end of July 2007. In the performance of this assignment as directed by the Enterprise under the control of William E. Toelkes, Plaintiff was compelled to buy dozens of airline tickets using Allied Marine's Bank of Hawaii (Saipan Branch) account No. 0032-031420, and Allied Marine's Citibank Credit Card Nos. 4315-0501-8067-5008 & 4315-0501-8067-5107. Bank of Hawaii and Citibank are engaged in interstate and foreign commerce. In the performance of the assignment described above Plaintiff was sometimes caused to purchase tickets on site in Indonesia and other foreign locations using the Citibank Credit Cards identified herein. Exhibit "2" attached hereto is a summary of air travel that Plaintiff was obliged to undertake in connection with his work for Defendants, with sample copies of ticket purchases. The amount of all involuntary purchases made by Plaintiff during his assignment in Indonesia and at times in Singapore, is about $39,000.00, which Defendants never intended to re-pay and to this day have unlawfully failed and refused to re-pay to Plaintiff, causing a substantial pecuniary loss to Plaintiff on the basis of coercion and deceit as further predicate acts within the overall racketeering scheme orchestrated by Defendant Toelkes through the Enterprise as his vehicle.

20. Consequently, Plaintiff of Allied Marine, in reliance upon the express wire request and the false and deceptive assurances of Defendant William E. Toelkes supported by the Enterprise, provided various marine salvage and related services to the ocean-going barge, then named "Martha E", and registered for unrestricted international trade (also referred to as the "Vessel"). All such services were contracted by interstate telecommunications from Guam to Allied Marine's CNMI office, which likewise issued billings to Defendants on Guam. Allied Marine performed all services contracted as requested by Defendants in a prompt, competent and professional manner and delivered timely invoices to Defendants following provision of such services. Plaintiff performed the services in, or travelled from Saipan to Guam other work sites abroad to complete the assignment as described in ¶20 hereinabove. The "Martha E" was then owned and operated at the time, by the Guam company of Defendant William E. Toelkes (Inter Bay Circle Marine, Inc.) which ownership

was facilitated by the Enterprise. with most if not all disbursements and receipts coursed through the Saipan branch of Bank of Guam (see ¶5 hereinabove) from accounts in the name of Defendant International Bridge and Construction/Marianas as described in hereinabove. The maritime services contracted for on Saipan from Guam by Defendants with Allied Marine were rendered at foreign locations outside of the CNMI. To reach the Vessel, Plaintiff, on most occasions, first traveled to Guam from the CNMI.

21. Although Defendant International Bridge and Construction/Marianas has made intermittent partial payments to Allied Marine in the CNMI for the services described herein, the last direct payment from Defendants to Allied Marine was made on or about July 31, 2009 and this amount was finally recorded as a partial and final payment against Allied Marine's invoice number 2607 for work done in October 2006, and a partial payment against Allied Marine's invoice number 2608 for work done in November 2006. Since July 2009, Defendants, consistent with their scheme of fraudulent inducement of Plaintiff, have repeatedly failed and refused and continue to fail and refuse, to pay Allied Marine for work done by Allied Marine from December 2006 to July 2008, with an approximate net amount of $290,000 then outstanding. There is no reason to doubt the projection into the future of such failure and refusal by Toelkes' control of the Enterprise to pay Plaintiff in furtherance of their RICO prohibited illicit pattern of racketeering.

22. It was on or about June 10, 2007, while Plaintiff was still in Indonesia attending to repairs of barge "Martha E" arising out of her capsize described herein above, that Robert Toelkes by means of foreign telephone conversations and electronic mail from Guam, acting on through the Enterprise, entered into an agreement with Plaintiff to transfer ownership of barge "Martha E" to an entity controlled by Plaintiff, VT Holdings, Inc. This agreement was confirmed and summarized by electronic mail -- see Exhibit "3" attached hereto. This agreement was yet another ruse and predicate act by Toelkes' operation of the Enterprise in an illicit pattern to perpetuate their fraudulent impression of honoring their debt to Plaintiff, while never actually intending making payment to Allied Marine of the principal sum then owed of approximately $270,000.00. Acting

through the Enterprise. Defendants entered this Agreement to further elude and to avoid payment to Plaintiff of the outstanding balance due. Enterprise member Robert Toelkes deceptively assured Plaintiff that Plaintiff's new corporation ultimately controlled by him would take ownership of the "Martha E" as security for the outstanding debt owed to Allied Marine by Defendants, while Defendant William E. Toelkes was at the same time fraudulently scheming through the Enterprise to dupe Plaintiff and ultimately to illicitly regain ownership of the Martha "E" to defeat the professed security arrangement for Plaintiff. This kind of fraudulent scheme is entirely consistent with the pattern of predicate acts committed by the Toelkes-controlled Enterprise on a continuing basis to achieve illegal objectives and still continues today.

23. To lend credence to foregoing scheme purporting to secure Plaintiff, but in reality to defraud him, on or about June 28, 2007 in Guam, U.S.A., on behalf of Defendant Toelkes and the Enterprise, Robert Toelkes executed a Request for Transfer of Ownership, Registry and Flag in favor of VT Holdings, Inc. a corporation duly organized and existing under the laws of Panama and controlled by Plaintiff. The Request for Transfer of Ownership, Registry and Flag, was negotiated via electronic mail between Guam and Batam, Indonesia between about May 26, 2007 and June 28, 2007, before hard copies were sent by foreign courier mail back and forth between Batam and Guam, commencing on Guam or about June 29, 2007, with the associated, contemporaneous payments of courier fees into banks and company accounts that engage in interstate and foreign commerce.

24. On or about July 13, 2007, by Defendant's inducement, Noel Slapp caused the "Martha E" to be re-named "Tamara V" and to be duly registered in Panama with VT Holdings, Inc., effectively owned/controlled by Plaintiff, as the sole lawful, recorded owner in accordance with the aforesaid agreement. Notwithstanding the change of ownership, it was understood that Defendants would continue to operate the "Tamara V" under a bareboat charter from its new registered owner, VT Holdings, Inc. The aforementioned transactions were completed by means of interstate and foreign mail (Exhibit "4" herein attached) and wire transactions between Defendants, Allied Marine, Messrs. Arias B. & Associates (VT Holdings' legal counsel in Panama) with payments made through

page 11 of 36 pages

International Bridge and Construction/Marianas' Bank of Guam, Saipan branch (¶5), Allied Marine's Bank of Hawaii, Saipan branch (¶20), and Arias B. Associates' HSBC account number 060-397585-001 in Panama, between the dates May 25, 2007 and July 3, 2007 (Exhibit "4" herein attached).

25. The allegations of ¶¶20 - 25 hereinabove involving interstate and foreign wire and mail transactions were orchestrated by Defendant William E. Toelkes in furtherance of the fraudulent scheme designed and implemented by the Enterprise to divest Plaintiff of his ownership interests in the "Tamara V." to inflict pecuniary losses thereby and wrongfully deny Plaintiff funds earned by his successful salvage and repair work on the "Tamara V."

## COUNT TWO: <u>Collection of Unlawful Debt</u>

26. On or about December 4, 2007, the "Tamara V" ran aground near Guam and sustained considerable damage. The vessel was detained by the United States Coast Guard. At the behest of Defendants, VT Holdings, Inc., as vessel owner, on or about April 8, 2008, unwittingly, executed a Payment Authority, described in detail ¶28 herein below, for payment of insurance proceeds to Inter Bay Circle Marine, ostensibly for repair of the aforesaid damage to the Vessel. VT Holdings, Inc. at all times understood that the insurance proceeds were disbursed strictly for Vessel repair. At no time either before or after issuance of the Payment Authority or disbursement of the insurance proceeds did VT Holdings directly or indirectly, transfer any ownership rights to the "Tamara V" or express or infer a Notice of Vessel Abandonment to any party. Ultimately, the repair funds facilitated by VT Holdings, and disbursed by the underwriters to Inter Bay Circle Marine, were never intended to be so used by Defendants. Contrariwise, in furtherance of the fraudulent scheme designed to divest Plaintiff and VT Holdings of their respective rights to the benefits of particular average repair moneys arising from the grounding of the "Tamara V", Defendant William E. Toekles, facilitated by the Enterprise, by means of interstate and foreign wire and mail transactions between Guam, Saipan,

and London, described in more detail by ¶29 hereinbelow, fraudulently and unlawfully appropriated said funds for illicit purposes, thereby committing the predicate act of fraudulent collection of a debt payment, victimizing the insurance underwriters and causing pecuniary loss to VT Holdings and by extension to Plaintiff.

COUNT THREE:  Fraudulent Inducement to Execute Payment Authorization.

27. In furtherance of the fraudulent Enterprise scheme designed to divest Plaintiff of his ownership interests in the "Tamara V," Defendant William E. Toelkes supported by the Enterprise fraudulently induced Plaintiff to arrange for the Payment Authority noted hereinabove in ¶27 by means of interstate wire and mail transactions between Guam, Saipan and the Republic of Panama. On or about April 5, 2008, Enterprise constituent Dianne Mayo, by way of interstate electronic mail from Guam to Saipan, requested that Plaintiff arrange the Payment Authority in accordance with pre-prepared letter wording sent by Dianne Mayo to Plaintiff – see Exhibit "5" herein attached. Plaintiff, unwittingly acting in good faith and by inducement arising from the fraudulent scheme of William E. Toelkes through the Enterprise, complied with the request of Dianne Mayo by sending Dianne Mayo's pre-prepared letter wording to VT Holdings legal counsel in Panama, by foreign electronic mail for signing. At all times, William E. Toelkes supported by the Enterprise fraudulently misrepresented to Plaintiff that the Payment Authority was to enable Inter Bay Circle Marine receive insurance moneys to make good the repairs to the damaged "Tamara V." Thus fraudulently induced, non-suspecting Plaintiff by means of interstate and electronic mail, foreign courier services, between Saipan, Panama and Guam, delivered the signed Payment Authority to William E. Toelkes through the Enterprise on or about April 15, 2008 – see Exhibit "6."

28. In furtherance of the fraudulent Enterprise scheme deceptively designed by Toelkes to divest Plaintiff of his ownership interest in the "Tamara V," in or about April 2008, the Enterprise, under guidance of Defendant William E. Toelkes, used the Payment Authority noted hereinabove in ¶¶27 and 28 hereinabove, facilitated by interstate and foreign wire and mail transactions between Guam

and London, associated with the payment of 'various moneys' arising from the insurance claim and subsequent "sale," to illicitly cause the non-suspecting insurance company to transfer "Tamara V"'s ownership salvage rights to Inter Bay Circle Marine, Inc., and to exclude Plaintiff from further ownership interests in the Vessel, all without any notice to Plaintiff. According to the Annual Corporate Report, signed by Defendant William E. Toelkes on or about May 8, 2008 on file at Guam Revenue and Taxation office, all the shares of Inter Bay Circle Marine for the year 2008 were in the hands of Defendant William E. Toelkes and his son, Enterprise constituent Robert Toelkes with the majority of shares held by Defendant William E. Toelkes. The said payment of 'various moneys' was by means of bank accounts that engage in interstate and foreign transactions between Guam and London. This illicit transfer of ownership rights to Inter Bay Circle Marine by Defendant William E. Toelkes by means of interstate wire and mail transactions was done with the full knowledge of, and used the proceeds from, William E. Toelkes' prior acts of wire fraud, theft by deception and unlawful collection of a debt, fully supported and facilitated by the RICO Enterprise in furtherance of its illicit pattern of predicate racketeering acts.

29. It was not until during the second half of October 2009 upon sale of the "Tamara V" in Busan (¶¶37 - 41 herein below), that Plaintiff heard a rumor to the effect that Defendants had obtained some form of "ownership" from the underwriters. But it was not until after Plaintiff's arrest in Busan, a little over a year later (¶¶44 - 46 hereinbelow) during a Korean police interview in the presence of Plaintiff, that Defendant William E. Toelkes admitted on the record that his company Inter Bay Circle Marine had purchased theretofore non-disclosed salvage ownership rights to the "Tamara V" from the insurance underwriters.

30. The applicable insurance policy mentioned in ¶28 hereinabove, was issued under British law. As such, the policy was expressly subject to the Marine Insurance Act of the United Kingdom. Pursuant to this law, it is a condition precedent that the vessel owner tender a Notice of Abandonment before a change of ownership can legally occur as a result of an insurance claim. At no time did VT Holdings, Inc. tender a Notice of Abandonment as yet another in a series of predicate

acts and omissions by Defendant Toelkes and the Enterprise. The apparent purchase of Vessel salvage rights from the underwriters, by Defendant William E. Toelkes through his control of the Enterprise was in furtherance of a pattern of deceptive, fraudulent, racketeering conspiracy with each part of the illegal scheme, built upon prior predicate acts of wire fraud, theft by deception, unlawful collected of a debt, and theft of property intended to and did, cause Plaintiff and other victims pecuniary losses. This final transaction being wholly unlawful and without legal force and effect rendered it null and void *ab initio*. But this nefarious action did in fact inflict pecuniary injury upon Plaintiff as it was maliciously and fraudulently used by Defendant William E. Toelkes as part of a continuing Enterprise racketeering scheme to convince the Busan Police to wrongfully arrest and detain Plaintiff (see Count Four herein below).

31. As continuing a dimension of the illicit Enterprise scheme and unlawful pattern, Defendant Toelkes and the Enterprise intentionally, deceptively and illicitly concealed from Plaintiff, VT Holdings, Inc., Allied Marine, the United States Government, the Territory of Guam Government, the Republic of Korea Government and the Republic of Panama Government the fraudulent attempted transfer of Vessel ownership through the predicate act of false application with the United States Coast Guard. Defendants never ceased to operate the "Tamara V" utilizing VT Holdings, Inc. registration papers, licenses and related documents. By secretly collecting an unlawful debt from the insurance company and then reinvesting the proceeds of that illicit act by purchasing the salvage rights to the Vessel from the London insurance company, and hiding these events, Defendant William E. Toelkes, utilizing the Enterprise, and by means of interstate and international wire transfers, engaged in money laundering.

32. After April, 2008, and after successfully accomplishing the prior acts of wire fraud, theft by deception and theft of property victimizing Plaintiff and others, in furtherance of the illicit Enterprise pattern of deception, Defendant William E. Toelkes fraudulently represented to Plaintiff that Inter Bay Circle Marine intended to repair the "Tamara V", thereby inducing Plaintiff to believe that the underlying debt was secured and non-suspecting Plaintiff essentially relied on what he was led to

believe was an honest assurance. This fraudulent, illusory representation to Plaintiff by Defendant Toelkes through the Enterprise, was by means of interstate electronic mail and telephone between Guam and Saipan during the months of April, 2008 to July, 2009 and amounts to a successive predicate act.

33. Beginning with the illicit Enterprise plan to induce Plaintiff to facilitate issuance of the Payment Authority which was part of a scheme to "purchase" the barge "Tamara V" through the improper and deceptive use thereof (¶27 hereinabove), and continuation of this improper scheme with the clandestine movement of the barge "Tamara V" from Guam to Korea in 2009, while avoiding Plaintiff's awareness by still utilizing the VT Holdings commercial (registration and statutory) documents, Defendant William E. Toelkes intentionally and deliberately directed the Enterprise to further its fraudulent objective by obtaining the confidence and trust of the non-suspecting Plaintiff and so that the Enterprise summarily took over and used the "Tamara V" to deny Plaintiff ownership of the property and the security held thereby.

34. In furtherance of the fraudulent Enterprise scheme designed to divest Plaintiff of his ownership interests in the "Tamara V," and as an additional predicate act further establishing a RICO pattern, Defendant William E. Toelkes utilized and directed the Enterprise to *not* register the alleged change of ownership arising from the illicit transaction with the insurance company, and perpetrated by the Enterprise led by Defendant William E. Toelkes, that resulted in the purported (but ersatz) ownership interests in the "Tamara V" by Defendants.. As a predicate act Defendant William E. Toelkes caused the Enterprise to *not* apply to the Republic of Panama for deletion of the Panama registration. Consistent with this subterfuge, Defendant Toelkes, with the Enterprise as his vehicle, continued to operate the "Tamara V" as still owned by VT Holdings, Inc., by presenting the official registration and statutory documents that were obtained by VT Holdings and that correctly named VT Holdings as the sole, lawful, registered owner of the "Tamara V", without attempting to use the ineffective USCG documentation, illicitly obtained by the predicate act of deception.

35. On or about March 14, 2009, without notice to Plaintiff, Allied Marine, VT Holdings, or the Government of Panama, the "Tamara V" in her damaged condition, was surreptitiously towed by Defendants from Guam to Busan, Korea as organized by the Enterprise. Notwithstanding their attempted change of ownership in April, 2008, the Enterprise directed by Defendant Toelkes, for purposes of keeping their apparent illicit purchase of Vessel salvage rights from the underwriter, arranged for the tender of Panama registry documentation showing continued ownership by VT Holdings, Inc., to maritime authorities in order for the "Tamara V" to depart Guam. They also provided the same documentation to Korean maritime authorities upon Vessel into Busan, Korea. When Defendants caused the "Tamara V" to depart Guam for Busan, Korea as noted hereinabove, the Enterprise as the vehicle of Defendant Toelkes, in committing a successive predicate act, used the lawful Panama registration and statutory documents that were obtained by VT Holdings, Inc., to hide from Plaintiff the fact of their fraudulent purchase of a salvage interest the Vessel from the underwriters. Examples of this nefarious Enterprise plan are the departure notices, including the aforementioned documents that are required by regulation and law were delivered by the Enterprise to the Guam Harbor Master and the United States Coast Guard. The arrival notices, including the aforementioned documents that are required by regulation and law were delivered by the Enterprise to the Korean authorities when the "Tamara V" arrived in Busan as part of the unlawful Enterprise pattern of predicate acts, evincing RICO racketeering. Most if not all of the above mentioned documents were delivered by the Enterprise to the Guam Harbor Master, United States Coast Guard, Korean authorities by means of interstate and foreign electronic mail.

36. On or about June 9, 2009 Plaintiff learned that the "Tamara V" was docked in Busan, Korea. Upon enquiry to Defendants, and with the Enterprise as his vehicle, Defendant William E. Toelkes continued the fraudulent ruse by informing Plaintiff that "Tamara V" was to be repaired in Busan.

37. On or about September 29th, 2009 Plaintiff learned that with the Enterprise as his vehicle, Defendant William E. Toelkes, was in a progressive stage of the illicit Enterprise scheme, proceeding to sell the "Tamara V" for the gross scrap price of about $158,000 and pocket the

proceeds, thereby making good on the illicit objective of victimizing Plaintiff. Plaintiff received copies of foreign electronic mail between the Enterprise and its appointed broker in Korea, a certain Ms. Kuon, clearly showing that Defendant William E. Toelkes, as another predicate act in the pattern of racketeering through the Enterprise, was attempting to sell the "Tamara V" in Busan, Korea. Plaintiff took immediate action to secure VT Holdings, Inc.'s ownership rights by taking control of its vessel in Busan. William E. Toelkes knew that whatever ownership rights he had to the "Tamara V" were fraudulently obtained and the proceeds of prior acts of wire fraud, theft by deception and theft of property directed at Plaintiff as described in ¶27 - 35 hereinabove.

38. In furtherance of the fraudulent Enterprise scheme designed and intended by Defendant Toelkes to divest the Plaintiff of his legitimate ownership interest in the "Tamara V," Defendant William E. Toelkes and/or the Enterprise as additional predicate acts in a continued pattern of RICO activity, in or about March, 2009, made various payments by means of interstate and international wire and mail transactions for port costs in Korea for the barge "Tamara V" and to engage various agents to sell the "Tamara V" for scrap.

39. On October 19, 2009, Plaintiff, acting in good faith, gave Defendants written notice that the "Tamara V" would be sold in Busan, unless arrangements were made to pay the Allied Marine the outstanding balance for work performed on the "Tamara V". Defendants did not respond to this notice. On the same day, Plaintiff also notified Defendants' Korean agent, Korwell Corporation, that VT Holdings was exercising its ownership rights and requested a smooth transfer of custody of the "Tamara V" to VT Holdings' agent. On the same day, Plaintiff and VT Holdings' agent met Korwell Corporation's Deug Soo Kim, Sung Jin Sohn and Korwell Corporation (Korwell) and discussed a smooth transfer of custody of "Tamara V" to VT Holdings' agent. At this meeting, Korwell Corporation through Deug Soo Kim and Sung Jin Sohn, agreed to transfer custody of the "Tamara V" to VT Holdings' agent upon payment of the overdue port and agency fees of about $54,000 incurred by Inter since March 2009. Deug Soo Kim told Plaintiff that Inter Bay Circle Marine and William Toelkes were "liars" since they promised many times to settle the long overdue bills but

page 18 of 36 pages

failed and refused to do so, thereby adding Korwell Corporation as a putative victim of the progressive pattern of corrupt RICO activity.

COUNT FOUR: <u>Retaliatory Malicious Prosecution; Wrongful Arrest</u>

40. On October 21, 2009, Allied Marine, acting lawfully on behalf of VT Holdings, sold the "Tamara V" in her damaged condition in Busan, Korea. The proceeds of this sale were credited by Allied Marine to the outstanding account owed by Defendants. After crediting the net proceeds of the sale to Defendants' account, the principal amount still owed by Defendants to Allied Marine became the net amount of $252,861.69 (excluding interest and subsequent costs incurred).

41. In furtherance of the fraudulent Enterprise scheme designed and intended by Defendant William E. Toelkes to divest the Plaintiff of his legitimate ownership interest in the "Tamara V," as additional predicate acts in a continued pattern of RICO racketeering activity;

(a) on or about October 19, 2009, William E. Toelkes acted through the Enterprise to remit by means of interstate and foreign wire transactions, funds to its Korean agents, Korwell Corporation to suddenly pay for long overdue port fees and to cause Korwell to physically interfere with the legitimate sale of the 'Tamara V" as noted in ¶41 hereinabove, and

(b) shortly after the 21 October 2009 sale of the "Tamara V", William E. Toelkes, by means of the Enterprise maliciously, without probable cause or notice to Plaintiff, and with the intent of injuring Plaintiff's good name and reputation and for the purpose of coercing Plaintiff to drop lawsuits for recovery of funds owed by Defendants to Allied Marine, filed criminal charges in Busan, Korea against Plaintiff. Among other abject misrepresentations, which constitute additional illicit predicate acts further demonstrating a racketeering pattern, Defendants falsely represented to Korean authorities that Plaintiff had willfully and feloniously stolen the "Tamara V." To accomplish this, William E. Toelkes utilizing the Enterprise, instructed Enterprise member Kwang Woo Park to travel from Guam to Busan

and sign the charge sheet as Vice President of Inter Bay Circle Marine, all of which was accomplished by means of interstate and foreign wire transactions, international airline flights and banks engaged in interstate and foreign commerce, and which also constituted a related predicate act within a continuing pattern of RICO racketeering activity.

42. On July 22, 2010, after exhausting all reasonable remedies, Allied Marine filed a civil action against corporations controlled by William E. Toelkes to collect the sum of $307,020.26 representing the remaining balance owed for marine services in the District Court for the Northern Mariana Islands, to wit: *Allied Marine Surveyors, Ltd. v. Inter Bay Circle Marine, et. al.,* Civil Action No. 10-0017 (hereinafter "the Civil Action").

43. During the afternoon of December 9, 2010, Plaintiff, unaware that Defendants had secretly filed the criminal charges against him in Busan [¶42 (b) hereinabove], departed Saipan on an Asiana Flight OZ604 to Sydney, transiting Seoul en route to Australia where he was to visit his parents during the holiday season. Immediately upon his arrival at the Seoul - Incheon International Airport, Plaintiff was arrested by Korean law enforcement officials on the basis of the false charges orchestrated against him by Defendant William E. Toelkes and his Enterprise. Plaintiff was initially questioned by law enforcement officials in the airport regarding his involvement in the sale of the "Tamara V". Following this interrogation and without the benefit of any legal representation or communications, he was thrown in jail.

44. On December 10, 2010, Plaintiff, clothed in tropical wear, was painfully handcuffed and transported in freezing weather conditions by foot, bus and train from Incheon to Busan by the Busan Marine Police. Upon his arrival in Busan, Plaintiff was interrogated by law enforcement officials for approximately ten hours without a break and without a copy of any charges filed against him. Various agents of the Defendants and the Enterprise, including their legal counsel were present during this interrogation without Plaintiff's knowledge. Following this lengthy interrogation, Plaintiff was then imprisoned in a Busan jail cell. During his incarceration, the Plaintiff was not permitted to contact his family, business associates or legal counsel.

45. On December 11, 2010, Plaintiff was released from jail. However, he was ordered by law enforcement officials that, as a condition of his release, he was prohibited from leaving Korea until the criminal investigation was completed.

46. On December 11, 2010, Plaintiff checked into the Busan Hotel. He remained at this hotel at his expense until the final dismissal of all criminal charges on January 26, 2011. During his seven week wrongful detention in Busan, Plaintiff was prevented from working and he lost substantial income. One such assignment alone was an appointment to conduct and underwater inspection of one of Allied Marine's regular clients' vessel that was subsequently given to a competitor of Allied Marine, valued at about $28,000. On December 12, 2010, Plaintiff was again interrogated by law enforcement officials without access to legal counsel, for several hours.

47. On or about December 13, 2010, Plaintiff was able to retain local legal counsel at his expense to defend the false and malicious charges brought against him by Defendants.

48. At approximately 2:00 p.m. on December 13, 2010, William E. Toelkes and Kwang Woo Park met with Plaintiff at the Busan Hotel. During this meeting, Defendant William E. Toelkes falsely denied that he or other members of the Enterprise or any of the companies that he controlled or represented, was responsible for the criminal charges. In furtherance of his coercive end game to force dismissal of Plaintiff's Guam lawsuit against him, and as another predicate act, Toelkes also told Plaintiff that he would have the criminal charges dismissed if Plaintiff dismissed the Civil Action and take nothing from the Civil Action. During a second meeting at the Busan Hotel at approximately 8:00 p.m. on December 13, 2010, William E. Toelkes repeated his coercive "dismissal offer" to Plaintiff.

49. Subsequent to the arrest of Plaintiff on December 9, 2010, Defendant William E. Toelkes, personally and through their authorized agents and the Enterprise, committed the wrongful predicate act of actively maintaining the prosecution of Plaintiff, maliciously, without reasonable or probable cause, and for vindictive, and improper motives and in clear retaliation for Plaintiff having filed the Civil Action (¶43 hereinabove) and having sold the "Tamara V". (¶41 hereinabove)

page 21 of 36 pages

50. On December 15, 2010, William E. Toelkes, Kwang Woo Park and the Plaintiff were interrogated by Busan law enforcement officials regarding the facts and circumstances surrounding the sale of the "Tamara V." William E. Toelkes admitted to these law enforcement officials that he received the written notice from Allied Marine regarding the imminent sale on October 19, 2009 (¶40 hereinabove).

51. During the interrogation on December 15, 2010, among other things, Defendant William E. Toelkes with the support of the Enterprise, and, as part of their racketeering pattern and in furtherance of the illicit Enterprise scheme, falsely and maliciously misrepresented the following material facts to Busan law enforcement officials as continuing fraudulent predicate acts as follows:

(a) that there was never a transfer of ownership of the "Tamara V" to VT Holdings, Inc.;

(b) that Robert Toelkes, William E. Toelkes' son, was not associated with Inter Bay Circle Marine and that Robert Toelkes was not authorized to act on behalf of Inter Bay Circle Marine or International Bridge Corporation;

(c) that the Defendants did not owe any money to Allied Marine;  and

(d) that Plaintiff had stolen the "Tamara V".

52. On or about December 24, 2010, William E. Toelkes flew back to Busan from Guam and met with law enforcement officials. Plaintiff is informed and believes that William E. Toelkes with the approval and support of the Enterprise, committed further predicate acts of fraud as part of their racketeering pattern and in furtherance of the illicit Enterprise scheme, maliciously provided additional false and misleading information during this meeting that was calculated to hoodwink these officials into filing formal charges in court against Plaintiff. Among other things, Defendant William E. Toelkes further falsely represented to Korean law enforcement officials that the "Tamara V" was to have been repaired in Korea, which was patently untrue and all Enterprise members, including himself knew it to be totally false.

53. On January 19, 2011, Enterprise members Robert Toelkes, Kwang Woo Park and Dianne Mayo together with local and Guam legal counsel, met with law enforcement officials in Busan.

Plaintiff was also present with his local legal counsel. During this meeting, the Enterprise maliciously provided false and misleading information to law enforcement officials in a concerted effort to dishonestly portray Plaintiff as a guilty party. Among other things, Enterprise constituent Robert Toelkes falsely stated as a further predicate act, that he was not an officer or shareholder of Inter Bay Circle Marine at the time of the transfer of ownership to VT Holdings in June 2007 (¶23 herein above). He further falsely stated as a predicate act, that he was not authorized to negotiate any business on behalf of Inter Bay Circle Marine in June 2007. He also falsely denied, as an additional predicate act, executing the Request for Transfer of Ownership transferring ownership of the "Tamara V" to VT Holdings, Inc. Robert Toelkes then admitted to Korean law enforcement officials that Defendants' actual intentions were to sell the "Tamara V" for scrap in Korea and not to be repaired. The Enterprise members were acting on the instructions of Defendant William E. Toelkes and falsely testified to further the fraudulent Enterprise scheme designed to divest Plaintiff of his security interests in the Barge, and also with the intent of injuring Plaintiff's good name and reputation and with the objective of wrongfully coercing Plaintiff from pursuing the recovery of funds owed to Allied Marine by Defendants.

54. On January 26, 2011, after considering the actual and full facts surrounding the sale by Plaintiff of the "Tamara V", the Busan Prosecutor's Office dismissed all charges against Plaintiff. A copy of the Busan District Public Prosecutor's dismissal certificate is annexed hereto as Exhibit "7". The Plaintiff was permitted to leave Korea on January 27, 2011.

55. In furtherance of the fraudulent Enterprise scheme designed and intended by Defendant William E. Toelkes to divest the Plaintiff of his legitimate ownership interest in the "Tamara V," Defendant William E. Toelkes and/or the Enterprise as additional predicate acts in a continued pattern of RICO activity, by means of interstate and foreign wire and mail transactions using banks, airlines that are engaged in interstate and foreign transactions, bought airline tickets, paid for hotel costs, Guam legal counsel fees, and other expenses associated with the predicates acts described in ¶¶49 - 54 hereinabove.

56. In furtherance of the fraudulent Enterprise scheme designed and intended by Defendant Toelkes to divest the Plaintiff of his legitimate ownership interest in the "Tamara V," Defendant William E. Toelkes working through or with the Enterprise, as additional predicate acts in a continued pattern of related RICO racketeering activity made payments by means of interstate wire and mail transactions to its lawyer(s) in Busan, Korea, to prepare, file and prosecute criminal charges against Plaintiff, in perpetration of the nefarious Enterprise scheme to maliciously retaliate against Plaintiff for selling the "Tamara V" and by filing the Saipan District Court lawsuit against Defendants and Enterprise members.

COUNT FIVE: Defrauding the United States Government.

57. In furtherance of the fraudulent Enterprise scheme designed and intended by Defendant William E. Toelkes to divest the Plaintiff of his legitimate ownership interest in the "Tamara V," by unlawful and fraudulent means, Defendant William E. Toelkes with the Enterprise as his vehicle, committed additional predicate acts in a continued pattern of RICO activity. On or about October 21, 2009, Toelkes utilized the Enterprise's illicit scheme to submit an application to the National Vessel Documentation Center, U.S. Department of Homeland Security, United States Coast Guard, that falsely claimed that the barge "Martha E"'s U.S. Coast Guard registration was not renewed in July 2007 "because the barge was out of service." (Exhibit "8" attached hereto). The Renewal Certification, sworn to and signed by Defendant William E. Toelkes, certified that the "recitations concerning vessel name, ...... ownership, hailing port ... remain absolutely the same."

58. Instead of responding to the Plaintiff's good faith, written notification on October 19, 2009, that the "Tamara V" would be sold unless arrangements were made to pay Allied Marine for work performed on the "Tamara V," Defendant William E. Toelkes in conjunction with the Enterprise, embarked on a systematic series of predicate acts, to wit: maliciously conspired to fraudulently resurrect the previous United States registration of the barge in the earlier name "Martha E" without

page 24 of 36 pages

disclosing its new name of "Tamara V" registered under VT Holdings as owner, despite a legal duty to make such accurate disclosures in connection with official submittals to the United States Government, with an Enterprise intent to mislead an agency of the United States Government and to injure Plaintiff's good name and reputation and with a retaliatory, vindictive purpose of coercing Plaintiff to drop efforts for recovery of funds owed to Allied Marine, and an Enterprise purpose to utilize the improper documentation in the wrongful, fraudulent criminal charges maliciously filed in Busan, Korea against Plaintiff, all to Plaintiff's pecuniary loss and injuries.

59. In furtherance of the fraudulent Enterprise scheme designed to divest Plaintiff of his legitimate ownership interest in the "Tamara V," Defendant William E. Toelkes made payments through the Enterprise, by means of interstate wire and mail transactions using banks engaged in interstate and foreign transactions, to the United States government for the falsified Renewal Certification noted hereinabove.

### COUNT SIX:  Projection of Threatened Future RICO violations.

60. Upon information and belief, on or about January 26, 2011, or shortly after the Busan Marine Police dismissed the charges against Plaintiff as noted hereinabove, Defendant William E. Toelkes as continuing predicate acts, which by their nature, project into the future, instructed the Enterprise and its agents and lawyers in Busan, Korea, to file new additional spurious and groundless charges against Plaintiff as a projection into the future of continued retaliatory, vindictive and malicious predicate acts of unlawful organized racketeering under RICO.  To the best of Plaintiff's knowledge and belief, those bogus but threatening charges are still and are likely to remain pending into the foreseeable future.  Since January 26, 2011, Plaintiff has not been able to travel to or transit through Korea, a normal travel route from Saipan, CNMI, for fear of being detained once again. Defendant Toelkes by means of the Enterprise when instituting this new malicious and abusive action in Korea necessarily depended upon and derived from their prior acts of wire fraud, theft by deception, and theft of property directed at Plaintiff, and Defendant William E. Toelkes with complicity of the

Enterprise are committing further predicate acts by utilizing their previous wire fraud, theft by deception and theft of property to generate new malicious and groundless criminal charges against Plaintiff in Korea based upon fraudulent representations to the Busan Police yet again.

62. The pattern of racketeering described above demonstrates the actual threat of continued illicit activity by the Enterprise under Defendant William E. Toelkes' direction, occurring from at least April 8, 2008 through at least January 26, 2011, over three (3) years, and/or presents a distinct threat of long term racketeering in that the Enterprise will continue the carrying on of its unlawful wire and mail fraud, theft by deception and theft of property, thereby depriving Plaintiff of his lawful interests in the insurance moneys and security and as a continued predicate act, to illegitimately coerce Plaintiff into dropping his Guam civil action pending in Federal District Court.

63. The pattern of racketeering described above instigated by Defendant William E. Toelkes and perpetrated through the Enterprise, continues to pose a threat of long term criminal conduct that will cause Plaintiff and multiple victims to suffer pecuniary losses. In addition to Plaintiff, Vimar Offshore, Inc., VT Holdings, Inc., Busan Marine Police, and Busan Prosecutor's office will bear the burden of pecuniary losses arising directly out of and being proximately caused by Defendant Williarm E. Toelkes' carrying on of the pattern of predicate acts by means of unlawful wire and mail fraud in filing the new charges as described in ¶61.

64. All the payments made by Defendants and by Defendants' fraudulent inducement, Allied Marine, described hereinabove by the First Claim for Relief, were for the purpose of, and to enable the Defendants to execute, their fraudulent scheme and incident to an essential part of their scheme to deprive Plaintiff of his ownership interests in "Tamara V."

65. After inducing Plaintiff to believe that his ownership interest in the "Tamara V" was secure by hiding the "sale" and the subsequent movement of "Tamara V" from Guam to Korea, Defendants waited until Plaintiff exerted his authority over the "Tamara V" by means of the written notice to prepare the fraudulent Renewal Certification and then file the falsified criminal charges against the Plaintiff. This scheme was knowingly implemented by Defendants both by their affirmative conduct

in secretly and incorrectly consummating the "sale" of the "Tamara V" between themselves and the insurance company, by continuing to hide the "sale" from Plaintiff and numerous local and national governments so that Plaintiff always believed that his ownership interests were safe, and then by deliberately falsifying the Renewal Certification to the United States of America and instituting Korean criminal charges with the objective of unjustly disrupting Plaintiff's ownership interests in the "Tamara V".

66. Defendant William E. Toelkes knew that the barge "Tamara V" was owned by VT Holdings and that Plaintiff was the beneficial owner of VT Holdings. Defendant William E. Toelkes knew that in receiving the insurance proceeds, he did so as a direct result of the prior acts of wire fraud. Defendant William E. Toelkes knew that fraudulently taking ownership of the "Tamara V" was facilitated by means of their intentional wire fraud, theft by deception, and theft of property directed at Plaintiff. Defendant William E. Toelkes knew that the criminal charges that he caused to be filed in Korea through the RICO Enterprise and in particular through Kwang Woo Park who signed the charge sheet as Vice President of Inter Bay Circle Marine, were false and supported by fraudulently obtained documentation, the proceeds of prior acts of interstate and foreign wire and mail fraud. These predicate acts that gave rise to multiple victims aside from Plaintiff such as, VT Holdings, Vimar Offshore, Inc., Allied Marine, the London insurance company, the United States Coast Guard, and the Busan Marine Police, and others, are parts of a conspiracy between Defendant William E. Toelkes and the Enterprise and form a pattern of illegal activity intentionally designed to deprive Plaintiff of his ownership interests in the barge 'Tamara V."

67. The association-in-fact Enterprise controlled by Defendant William E. Toelkes described above was and is acting outside the regular course of business activities of the participants. Not all the participants making up the Enterprise are employees of Defendant William E. Toelkes. Employees of all three companies controlled by William E. Toelkes (¶5 hereinabove) move at will between the companies and at times work for all three companies.

68. By virtue of the actions alleged above, Defendants William E. Toelkes and DOES 1 - 10 acted knowingly, consciously and maliciously in violation of the Racketeering Influenced Corruption Act (RICO) 18 U.S.C. § 1962(b).

### SECOND CLAIM FOR RELIEF

### AGAINST WILLIAM E. TOELKES & DOES 1-10:
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, (RICO)
CODIFIED AS TITLE IX OF THE ORGANIZED CRIME CONTROL ACT OF 1970 (18 U.S.C. §§1961-68)

### RICO VIOLATION, 18 U.S.C. §1962(c)

69. The allegations contained in ¶¶1-68 hereinabove, are fully incorporated herein by reference.

70. 18 U.S.C. §1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

71. Defendant William E. Toelkes is the culpable person who organized, controlled and conducted the affairs of an association-in-fact qualifying as an 18 U.S.C. §1961(4) Enterprise, consisting of Defendant William E. Toelkes, Defendant International Bridge and Construction/Marianas, William E. Toelkes' legal counsel, Robert Toelkes, Diane Mayo, Kwang Woo Park, Inter Bay Circle Marine and Does 1-10, , engaged in the unlawful pattern of racketeering alleged herein, conducted through interstate and foreign commerce.

72. William E. Toelkes, through the acts and omissions set forth above, directly conducted and participated in the management of the RICO Enterprise through a pattern of racketeering activity and/or collection of an unlawful debt.

73. Defendants DOES 1 – 10, through the acts and omissions set forth above, directly conducted and participated in the management of the RICO Enterprise described in ¶66 hereinabove through a pattern of racketeering activity and/or collection of an unlawful debt.

page 28 of 36 pages

74. By virtue of the actions alleged above, Defendants acted knowingly, consciously and maliciously in violation of the Racketeering Influenced Corruption Act (RICO) 18 U.S.C. §1962(c).

## THIRD CLAIM FOR RELIEF

### AGAINST WILLIAM E. TOELKES INTERNATIONAL BRIDGE AND CONSTRUCTION/MARIANAS, & DOES 1-10:
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, (RICO) CODIFIED AS TITLE IX OF THE ORGANIZED CRIME CONTROL ACT OF 1970 (18 U.S.C. §§1961-68)

### RICO VIOLATION, 18 U.S.C. §1962(d)

75. The allegations of ¶¶1 - 74 hereinabove are fully incorporated herein by reference.

76. A defendant may be held liable for a conspiracy to violate 18 U.S.C. §1962(d) if he knowingly agrees to facilitate a scheme that includes the operation or management of a RICO enterprise.

77. To be liable under 18 U.S.C. §1962(d) a defendant need only knowingly perform services of a kind that facilitate the activities of those who are operating the enterprise in an illegal manner.

78. International Bridge and Construction/Marianas, being a *de facto* instrument, and the alter ego of Defendant William E. Toelkes, violated 18 U.S.C. §1962(d) *inter alia*, by agreeing to provide business support services such as accounting and banking facilities to Inter Bay Circle Marine, "Tamara V." facilitating the transfer of funds to, from and on behalf of these entities and the Enterprise in general, and by facilitating the activities of those who operated these entities and the Enterprise in general, in an illegal manner. International Bridge and Construction/Marianas that is absolutely controlled by Defendant Williarm E. Toelkes as described hereinabove ¶4, such that there is not a genuine corporate existence separate or indistinguishable from Defendant William E. Toelkes, knowingly facilitated and participated in a scheme that constitutes a violation of 18 U.S.C. §§1962(b) and (c).

79. William E. Toelkes, through the acts and omissions set forth above violated 18 U.S.C. §1962(d) *inter alia*, by knowingly facilitating and participating in a scheme that constitutes a violation of 18 U.S.C. §§1962(b) and (c).

80. DOES 1- 10, through the acts and omissions set forth above violated 18 U.S.C. § 1962(d) by, among other things, knowingly facilitating and participating in a scheme that constitutes a violation of 18 U.S.C. §§1962(b), and (c).

# FOURTH CLAIM FOR RELIEF
## AGAINST WILLIAM E. TOELKES INTERNATIONAL BRIDGE AND
## CONSTRUCTION/MARIANAS, & DOES 1-10:
## MALICIOUS PROSECUTION

81. The allegations of ¶¶1 – 13, 41 – 57, 61 - 68 hereinabove are fully incorporated herein by reference.

82. The actions of Defendants in causing false charges to be filed against Plaintiff were motivated by malice and an improper desire to coerce Plaintiff to cease the collection of funds legitimately owed to Allied Marine and not because Plaintiff had violated any criminal laws. The subsequent arrest of Plaintiff constituted a malicious arrest.

83. The actions of the Defendants in maliciously providing false and misleading information to law enforcement officials during Plaintiff's incarceration and detention in Korea were motivated by a desire to coerce Plaintiff to dismiss the Civil Action and for other improper reasons. On December 13, 2010, William E. Toelkes expressly agreed to dismiss the charges if Plaintiff dismissed the Civil Action. Defendants, personally and through their authorized agents and employees, took an active part in aggressively pressing the prosecution of Plaintiff, maliciously, on the basis of false allegations, without reasonable or probable cause, and or private and improper motives.

84. Before to being taken into police custody in Korea Plaintiff had never been arrested or had any criminal charge brought against him.

85. By reason of the false and malicious charges against Plaintiff made by the Defendants, the Plaintiff has sustained substantial damages, to wit:

○ Plaintiff has suffered humiliation, physical discomfort and mental anguish; and

○ Plaintiff was forced to lose considerable income; and

○ Plaintiff incurred food and lodging expenses during his detention in Korea; and

○ Plaintiff incurred expenses employing legal counsel in Korea; and

○ Plaintiff can no longer travel to or transit through Korea thereby losing a valuable area of business and incurring higher travel costs by having to transit through alternative airports, and

○ Other damages as will be proven at the trial of this civil action.

86. By proceeding against Plaintiff as aforesaid, Defendants acted maliciously and wrongfully, with intent, design, and purpose to injure Plaintiff. Because of the malicious violation of Plaintiff's rights by the Defendants, Plaintiff is entitled to punitive damages.

## FIFTH CLAIM FOR RELIEF
## AGAINST WILLIAM E. TOELKES INTERNATIONAL BRIDGE AND
## CONSTRUCTION/MARIANAS, & DOES 1-10:
## CRIMINAL CONVERSION

87. The allegations of ¶¶1 – 13, 27 – 40, 58 – 60, 65 - 66 hereinabove are fully incorporated herein by reference.

88. Conversion is: (i) an intentional exercise; (ii) of dominion or control; (iii) over a chattel; (iv) resulting in serious interference with the right of control by one lawfully entitled to possession.

page 31 of 36 pages

89. In taking "Tamara V" belonging to Plaintiff, by means of deception, Defendants intentionally exercised dominion or control over the barge, thereby interfering with the right of control to the barge by its lawful owner.

90. In retaining possession of insurance proceeds without turning over the proceeds to Plaintiff, Defendants have intentionally exercised dominion or control over them, thereby interfering with the right of the control to those funds by their lawful owner.

91. By the terms of the agreement with Plaintiff, Defendants should have acted at all times material hereto as the trustee of Plaintiff. Defendants never had the right to retain the insurance proceeds in the event that the particular average repairs were not completed.

92. Nevertheless, Defendants have exercised dominion over the converted property in a manner that has deprived Plaintiff of the funds and caused him to suffer pecuniary losses.

93. Defendants appropriation and conversion of Plaintiff's property was without legal or factual basis, and was motivated by malice, or reckless indifference to his rights, thereby entitling Plaintiff to actual and punitive damages as well as pre-judgment and post judgment interest until these funds are returned.

## SIXTH CLAIM FOR RELIEF

### AGAINST WILLIAM E. TOELKES INTERNATIONAL BRIDGE AND CONSTRUCTION/MARIANAS, & DOES 1-10:

### FRAUD

94. The allegations of ¶¶1 – 13, 19 - 93 hereinabove are fully incorporated herein by reference.

95. To induce Plaintiff from pursuing collection action for moneys owed to Allied Marine (¶ 23 herein above), Defendants represented that Plaintiff would take lawful ownership of the "Tamara V" as security against the debt owed by Defendants. Additionally Defendants represented to Plaintiff that the Payment Authority (see ¶29 hereinabove), was to enable Defendants to receive particular

page 32 of 36 pages

average insurance proceeds for repair of the "Tamara V." Defendants' representations, at a minimum in the second instance herein, were false at the time they were made and were made with the intent of fraudulently controlling the "Tamara V" and the insurance proceeds.

96. After Defendants took such control they systematically executed their plan to deprive Plaintiff of cash and property by and through their conversion of these assets as set forth above.

97. As the direct and proximate result of Defendants actions, Plaintiff has suffered damages to be proven at trial.

98. Defendants' fraudulent misappropriation and conversion of Plaintiff's funds and assets was motivated by malice, or the reckless indifference to Plaintiff's rights, thereby warranting an award of punitive damages.

**SEVENTH CLAIM FOR RELIEF**

**AGAINST WILLIAM E. TOELKES INTERNATIONAL BRIDGE AND CONSTRUCTION/MARIANAS, & DOES 1-10:**

**CIVIL CONSPIRACY**

99. The allegations of ¶¶1 - 98 hereinabove are fully incorporated herein by reference.

100. Each Defendant was the agent or employee of the other Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency or employment and all Defendants acted at all times with knowledge of the actions of the other Defendants.

101. As the foregoing allegations have described in more detail, beginning in June 2007, Defendants knowingly, willfully conspired and agreed among themselves, or in the alternative, later joined the ongoing conspiracy, fully ratified all past actions as the conspiracy objective, and agreed, *inter alia,* as follows:

    a. To form the enterprise alleged above for the purpose of coercing the Plaintiff from pursuing the collection of a legitimate debt;

page 33 of 36 pages

b. To maliciously submit false and misleading statements to law enforcement officials in Korea for wrongful and surrepticious purposes;

c. To conspire to maliciously deprive the Plaintiff of his rights by causing his incarceration and detention, by the actions stated in preceding ¶b hereinabove.

102. Defendants performed the acts and things alleged above pursuant to and in furtherance of said conspiracy and above-alleged agreement.

103. As alleged in more detail hereinabove, each Defendant furthered the conspiracy by cooperating with, lending aid, money and encouragement to, or ratifying and adopting the acts of, the other Defendants. Each Defendant had knowledge not only of the actions the other Defendants, but also of the conspiracy itself, its unlawful and tortious purpose.

104. As a direct and proximate cause of said conspiracy, and the wrongful acts alleged herein, Defendants intentionally injured Plaintiff and caused Plaintiff to suffer substantial monetary damages, including, but not limited to lost income, legal expenses, lodging expenses and other damages as will be proven at the trial of his civil action.

105. In performing these acts, Defendants misconduct was malicious, fraudulent, oppressive, and intended to injure the Plaintiff. Consequently, the Plaintiff is entitled to punitive damages.


## EIGHTH CLAIM FOR RELIEF

## AGAINST WILLIAM E. TOELKES INTERNATIONAL BRIDGE AND

## CONSTRUCTION/MARIANAS, & DOES 1-10:

## ALTER EGO

106. The allegations of ¶¶1 - 105 hereinabove are fully incorporated herein by reference.

107. Plaintiff is informed and believes and thereon alleges that Inter Bay Circle Marine, International Bridge Corporation and International Bridge and Construction/Marianas are, and at all times relevant were, alter egos of Defendant William E. Toelkes and that there exists, and at all

times herein mentioned has existed, a unity of interest and ownership between said entities such that any separateness has ceased to exist. Aside from the dominion exercised by Defendant William E. Toelkes over the three companies noted in ¶¶4 & 5, the participants of the Enterprise described in ¶17, funds of Inter Bay Circle Marine, International Bridge Corporation, International Bridge and Construction/Marianas, and William E. Toelkes have been comingled, each corporations' funds have been used to pay the operational expenses and debts of the others without proper accounting functions to record and acknowledge a separation of corporate existence, assets have been placed in the name of the Defendants that have been purchased with the funds of the other corporations, and the corporate separateness of said entities have been disregarded on a regular basis.

108. All of the corporations operate out of the same office, they all share personnel including accounting staff. None of the corporations maintain proper corporate documents and records to wit:

(a) International Bridge and Construction/Marianas has not had a CNMI business license since at least February 2010 yet it continues to operate in contravention to CNMI Public Law 11-73.

(b) On January 7, 2007, the Secretary of State of Ohio cancelled International Bridge Corporation's Articles of Incorporation. Its Articles of Incorporation were reinstated over one year later on February 12, 2008. Therefore International Bridge was not a legitimate corporate entity for all but seven (7) days of 2007 and yet it continued to do business.

(c) The corporations file untimely and conflicting annual corporate returns to Guam Revenue and Taxation.

109. Inasmuch as Inter Bay Circle Marine, International Bridge Corporation and International Bridge and Construction/Marianas are alter egos of Defendant William E. Toelkes, said entities are severally and equally liable to Plaintiff for relief as alleged herein.

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, as follows:

1. Compensatory, liquidated damages to be proven at trial including treble damages as authorized by 18 U.S.C. § 1964(c); and

2. Punitive damages in the sum of Three Million Dollars ($3,000,000.00); and

3. Pre-judgment, post judgment interest, costs of suit and reasonable attorneys' fees allowed by law and subject to the discretion of the court, and

4. For such other and further relief as this Court deems just and proper.


Dated this 26th day of October, 2012.

*/s/ Noel Slapp*

# Exhibit 1

PAYMENTS MADE TO ALLIED MARINE SURVEYORS AND NOEL SLAPP

IBCM BANK OF GUAM PMTS TO ALLIED MARINE SURVEYORS

| | | | |
|---|---|---|---|
| 16146 | 3/28/1997 | ALLIED MARINE SURVEYORS, LTD. | 4,808.81 |
| 16267 | 6/5/1997 | ALLIED MARINE SURVEYORS, LTD. | 3,149.66 |
| 16478 | 10/7/1997 | ALLIED MARINE SURVEYORS, LTD. | 8,240.00 |
| 16535 | 11/19/1997 | ALLIED MARINE SURVEYORS, LTD. | 855.38 |
| 16594 | 12/30/1997 | ALLIED MARINE SURVEYORS, LTD. | 2,190.26 |
| 16694 | 3/3/1998 | ALLIED MARINE SURVEYORS, LTD. | 10,000.00 |
| 17764 | 3/31/1999 | ALLIED MARINE SURVEYORS, LTD. | 500.00 |
| 18641 | 12/20/1999 | ALLIED MARINE SURVEYORS, LTD. | 5,036.76 |
| 18548 | 1/12/2000 | ALLIED MARINE SURVEYORS, LTD. | 332.50 |
| 18859 | 5/31/2000 | ALLIED MARINE SURVEYORS, LTD. | 931.52 |
| 19248 | 1/24/2001 | ALLIED MARINE SURVEYORS, LTD. | 3,402.08 |
| 19372 | 3/24/2001 | ALLIED MARINE SURVEYORS, LTD. | 2,410.68 |
| 19484 | 5/31/2001 | ALLIED MARINE SURVEYORS, LTD. | 3,000.00 |
| 19677 | 9/4/2001 | ALLIED MARINE SURVEYORS, LTD. | 5,000.00 |
| 19697 | 9/27/2001 | ALLIED MARINE SURVEYORS, LTD. | 9,606.07 |
| 19864 | 1/22/2002 | ALLIED MARINE SURVEYORS, LTD. | 285.00 |
| 19893 | 1/25/2002 | ALLIED MARINE SURVEYORS, LTD. | 5,106.72 |
| 19955 | 4/18/2002 | ALLIED MARINE SURVEYORS, LTD. | 6,974.48 |
| 19975 | 5/9/2002 | ALLIED MARINE SURVEYORS, LTD. | 2,605.78 |
| 10106 | 5/15/2003 | ALLIED MARINE SURVEYORS, LTD. | 7,490.00 |
| 20746 | 7/2/2004 | ALLIED MARINE SURVEYORS, LTD. | 5,598.76 |
| 20784 | 9/10/2004 | ALLIED MARINE SURVEYORS, LTD. | 884.05 |
| 20783 | 9/13/2004 | ALLIED MARINE SURVEYORS, LTD. | 9,820.00 |
| 20786 | 9/14/2004 | ALLIED MARINE SURVEYORS, LTD. | 1,546.00 |
| 20891 | 2/8/2005 | ALLIED MARINE SURVEYORS, LTD. | 5,660.05 |
| 20905 | 3/7/2005 | ALLIED MARINE SURVEYORS, LTD. | 10,000.00 |
| 20937 | 5/18/2005 | ALLIED MARINE SURVEYORS, LTD. | 8,872.25 |
| 20947 | 6/8/2005 | ALLIED MARINE SURVEYORS, LTD. | 8,872.75 |
| 20959 | 7/5/2005 | ALLIED MARINE SURVEYORS, LTD. | 10,000.00 |
| 20976 | 7/26/2005 | ALLIED MARINE SURVEYORS, LTD. | 5,000.00 |
| 20977 | 7/26/2005 | ALLIED MARINE SURVEYORS, LTD. | 8,123.18 |
| 20990 | 8/9/2005 | ALLIED MARINE SURVEYORS, LTD | 5,610.00 |
| 20992 | 8/16/2005 | ALLIED MARINE SURVEYORS, LTD | 10,000.00 |
| 20994 | 8/25/2005 | ALLIED MARINE SURVEYORS, LTD | 5,598.57 |
| 21009 | 9/12/2005 | ALLIED MARINE SURVEYORS, LTD | 5,500.00 |
| 21027 | 10/5/2005 | ALLIED MARINE SURVEYORS, LTD | 5,500.00 |
| 21028 | 10/7/2005 | ALLIED MARINE SURVEYORS, LTD | 5,000.00 |
| 21035 | 10/20/2005 | ALLIED MARINE SURVEYORS, LTD | 5,000.00 |
| 21052 | 11/19/2005 | ALLIED MARINE SURVEYORS, LTD | 5,000.00 |
| 95571 WIRE | 2/17/2006 | ALLIED MARINE SURVEYORS, LTD | 9,050.00 |
| 25001 | 3/24/2006 | ALLIED MARINE SURVEYORS, LTD | 15,000.00 |
| 25226 | 8/29/2006 | ALLIED MARINE SURVEYORS, LTD | 10,000.00 |
| 25382 | 11/22/2006 | ALLIED MARINE SURVEYORS, LTD | 10,000.00 |
| 25475 | 1/11/2007 | ALLIED MARINE SURVEYORS, LTD | 762.03 |
| 25706 | 4/19/2007 | ALLIED MARINE SURVEYORS, LTD | 10,000.00 |

| | | | |
|---|---|---|---|
| 26835 | 12/21/2007 | ALLIED MARINE SURVEYORS. LTD | 10,000.00 |
| 27927 | 7/11/2008 | ALLIED MARINE SURVEYORS. LTD | 15,434.83 |
| 28068 | 7/29/2008 | ALLIED MARINE SURVEYORS. LTD | 10,000.00 |
| 28069 | 7/29/2008 | ALLIED MARINE SURVEYORS. LTD | 10,000.00 |
| 28721 | 12/24/2008 | ALLIED MARINE SURVEYORS. LTD | 20,000.00 |
| 28813 | 1/21/2009 | ALLIED MARINE SURVEYORS. LTD | 20,000.00 |
| 28976 | 2/6/2009 | ALLIED MARINE SURVEYORS. LTD | 25,000.00 |
| 29162 | 3/3/2009 | ALLIED MARINE SURVEYORS. LTD | 25,000.00 |
| | | **IBCM BANK OF GUAM TOTALS** | 393,758.17 |

NIPPO CORPORATION PMTS TO ALLIED MARINE SURVEYORS
FIRST HAWAIIAN BANK

| Check | Date | Description | Amount |
|---|---|---|---|
| 494 | 2/23/2006 | ALLIED MARINE SURVEYORS. LTD | 21,719.06 |
| | | FIRST HAWAIIAN BANK TOTALS | 21,719.06 |

IBC BANK OF GUAM PMTS TO ALLIED MARINE SURVEYORS LTD
BANK OF GUAM

| Check | Date | Description | Amount |
|---|---|---|---|
| 2518 | 7/31/2009 | ALLIED MARINE SURVEYORS. LTD | 20,000.00 |
| 95241 WIRE | 7/6/2009 | ALLIED MARINE SURVEYORS. LTD | 20,050.00 |
| 95527 WIRE | 5/15/2009 | ALLIED MARINE SURVEYORS. LTD | 10,050.00 |
| | | BANK OF GUAM TOTALS | 50,100.00 |

IBC KAW VALLEY ACCOUNT KANSAS PMTS TO ALLIED MARINE SURVEYORS LTD
KAW VALLEY STATE BANK

| Check | Date | Description | Amount |
|---|---|---|---|
| 13892 | 9/15/1995 | ALLIED MARINE SURVEYORS, LTD. | 100.00 |
| 16199 | 5/24/1996 | ALLIED MARINE SURVEYORS, LTD. | 312.00 |
| 16994 | 8/19/1996 | ALLIED MARINE SURVEYORS, LTD. | 100.00 |
| 22545 | 12/19/1997 | ALLIED MARINE SURVEYORS, LTD. | 362.63 |
| 23779 | 4/29/1998 | ALLIED MARINE SURVEYORS, LTD. | 803.33 |
| 27470 | 3/8/1999 | ALLIED MARINE SURVEYORS, LTD. | 5,000.00 |
| 29799 | 1/11/2000 | ALLIED MARINE SURVEYORS, LTD. | 10,000.00 |
| 30206 | 2/22/2000 | ALLIED MARINE SURVEYORS, LTD. | 2,469.36 |
| 30663 | 5/31/2000 | ALLIED MARINE SURVEYORS, LTD. | 2,420.35 |
| 31022 | 8/4/2000 | ALLIED MARINE SURVEYORS, LTD. | 5,400.00 |
| 31975 | 12/23/2000 | ALLIED MARINE SURVEYORS, LTD. | 1,161.93 |
| 90009 WIRE | 7/30/2001 | ALLIED MARINE SURVEYORS, LTD. | 9,470.00 |
| 40203 | 10/23/2003 | ALLIED MARINE SURVEYORS, LTD. | 11,900.82 |
| 40882 | 12/18/2003 | ALLIED MARINE SURVEYORS, LTD. | 4,000.00 |

| | | | | |
|---|---|---|---|---|
| 41181 | 1/20/2004 | ALLIED MARINE SURVEYORS, LTD. | | 22,750.00 |
| 41747 | 3/11/2004 | ALLIED MARINE SURVEYORS, LTD. | | 2,800.00 |
| 41973 | 4/8/2004 | ALLIED MARINE SURVEYORS, LTD. | | 5,893.54 |
| 44286 | 1/21/2005 | ALLIED MARINE SURVEYORS, LTD. | | 10,000.00 |
| 44876 | 4/4/2005 | ALLIED MARINE SURVEYORS, LTD. | | 14,828.25 |
| 44956 | 4/21/2005 | ALLIED MARINE SURVEYORS, LTD. | | 10,000.00 |
| 46444 | 10/24/2005 | ALLIED MARINE SURVEYORS. LTD | | 5,000.00 |
| 47031 | 12/17/2005 | ALLIED MARINE SURVEYORS. LTD | | 5,000.00 |

KAW VALLEY BANK TOTALS 129,772.21

IBCM BANK OF GUAM PMTS TO CITIBANK FOR NOEL SLAPP CREDIT CARD ACCOUNT

| Check | Void | Date | Description | Amount |
|---|---|---|---|---|
| 20866 | | 12/28/2004 | CITIBANK NOEL SLAPP ACCOUNT | 8,000.00 |
| 20936 | | 5/12/2005 | CITIBANK NOEL SLAPP ACCOUNT | 8,108.87 |
| 25356 | | 11/13/2006 | CITIBANK NOEL SLAPP ACCOUNT | 10,000.00 |
| 25401 | | 12/5/2006 | CITIBANK NOEL SLAPP ACCOUNT | 10,000.00 |
| 25464 | | 1/6/2007 | CITIBANK NOEL SLAPP ACCOUNT | 10,000.00 |
| 25637 | | 3/30/2007 | CITIBANK NOEL SLAPP ACCOUNT | 10,000.00 |
| 25822 | | 5/25/2007 | CITIBANK NOEL SLAPP ACCOUNT | 10,000.00 |

66,108.87

ASL SINGAPORE  CASH ADVANCES TO NOEL SLAPP

| | | | |
|---|---|---|---|
| | 1/10/2005 | CASH GIVEN IN BATAM NOTED INV.2518 | 1,000.00 |
| | 3/29/2005 | CASH GIVEN IN SINGAPORE LIST AMS'06 STATEMEI | 3,433.25 |
| | 4/20/2005 | CASH GIVEN IN SINGAPORE PCR MAR.05 | 2,282.21 |
| | 12/29/2005 | ASL ADVANCED TO ALLIED 12-20-05 | 15,030.81 |
| | 1/16/2006 | ASL ADVANCE TO ALLIED 1-16-06 | 5,000.00 |
| | 4/27/2006 | ASL ADV. TO ALLIED S$15k | 9,529.86 |
| | 5/23/2006 | ASL ADV. TO ALLIED S$26k | 16,668.70 |
| | 5/25/2006 | ASL ADV. TO ALLIED S$10k | 6,377.55 |
| | 1/8/2007 | ASL ADVANCE NOEL SLAPP | 10,000.00 |
| | 2/13/2007 | ASL ADVANCE NOEL SLAPP | 10,000.00 |

79,322.38

RWT/WET TO NOEL

| | | | |
|---|---|---|---|
| | 9/13/2005 | RWT PAID ANITA'S AIRFARE AMS '06 STATEMENT | 1,828.93 |
| | 9/26/2005 | RWT PAID TV FOR THORFINN AMS '06 STATEMENT | 4,167.07 |
| | 2/17/2006 | WET CK#6120 CASH PAYMENT AMS REC#3217 | 6,000.00 |

11,996.00

ROCKING T RANCH KANSAS PAYMENTS TO CITIBANK

# Exhibit 2

**International Bridge & Construction Marianas/Flight Purchases 2006 - 2007**

| Date | Payment | Details |
|------|---------|---------|
| 7 Mar 2006 | Saipan BoH | Saipan - Guam - Manila - Singapore |
| 8 Mar 2006 | Citi Visa | Singapore - Makassar - Singapore |
| 21 Mar 2006 | Citi Visa | Singapore - Makassar - Singapore |
| 24 Mar 2006 | Citi Visa | Singapore - Makassar - Singapore |
| 4 Apr 2006 | Saipan BoH | Saipan - Guam - Saipan |
| 4 Apr 2006 | Saipan BoH | Manila - Saipan - Manila |
| 28 Apr 2006 | Cash | Makassar - Kendari |
| 5 May 2006 | Cash | Kendari - Makassar |
| 1 Jun 2006 | Saipan BoH | Saipan - Guam - Manila - Singapore - Makassar |
| 6 Jun 2006 | Citi Visa | Makassar - Jakarta |
| 9 Jun 2006 | Saipan BoH | Jakarta - Singapore - Manila - Guam - Saipan |
| 30 Jun 2006 | Saipan BoH | Saipan - Guam - Manila - Singapore - Jakarta |
| 20 Jul 2006 | Citi Visa | Makassar - Jakarta - Singapore |
| 23 Jul 2006 | Citi Visa | Singapore - Denpasar - Makassar |
| 16 Jul 2006 | Citi Visa | Makassar - Jakarta - Singapore |
| 17 Jul 2006 | Citi Visa | Singapore - Jakarta - Makassar |
| 25 Aug 2006 | Saipan BoH | Denpasar - Guam - Saipan |
| 14 Sep 2006 | Citi Visa | Makassar - Jakarta - Singapore |
| 15 Sep 2006 | Citi Visa | Singapore - Surabaya - Makassar |
| 24 Sep 2006 | Citi Visa | Makassar - Jakarta - Singapore - Saipan |
| 10 Oct 2006 | Saipan BoH | Saipan - Guam - Manila - Singapore |
| 17 Oct 2006 | Saipan BoH | Singapore - Manila - Guam - Saipan |
| 25 Oct 2006 | Saipan BoH | Saipan - Guam - Manila - Singapore |
| 27 Oct 2006 | Cash | Singapore - Batam, Batam Ferry |
| 2 Nov 2006 | Citi Visa | Jakarta - Singapore |
| 25 Nov 2006 | Citi Visa | Lion Air (Hang Nadim) - Batam |
| 25 Nov 2006 | Citi Visa | Lion Air - Batam |
| 7 Dec 2006 | Citi Visa | Garuda - Batam |
| 13 Dec 2006 | Citi Visa | Singapore - Jakarta |
| 14 Dec 2006 | Citi Visa | Jakarta - Singapore |
| 17 Dec 2006 | Cash | Singapore - Batam, Batam Ferry |
| 19 Dec 2006 | Cash | Batam - Singapore, Batam Ferry |

**International Bridge & Construction Marianas/Flight Purchases 2006 - 2007**

| Date | Payment | Details |
|------|---------|---------|
| 22 Dec 2006 | Saipan BoH | Singapore - Manila - Guam - Saipan |
| 27 Dec 2006 | Saipan BoH | Saipan - Guam - Saipan |
| 2 Jan 2007 | Saipan BoH | Saipan - Guam - Manila - Singapore |
| 13 Jan 2007 | Cash | Singapore - Batam, Batam Ferry |
| 18 Jan 2007 | Citi Visa | Garuda - Jakarta |
| 25 Jan 2007 | Citi Visa | Garuda - Jakarta |
| 29 Jan 2007 | Citi Visa | Garuda - Batam |
| 7 Feb 2007 | Citi Visa | Penguin Ferry Services - Singapore |
| 13 Mar 2007 | Citi Visa | Garuda - Batam |
| 1 Apr 2007 | Saipan BoH | Saipan - Guam - Denpasar |
| 2 Apr 2007 | Citi Visa | Denpasar - Jakarta |
| 5 Apr 2007 | Citi Visa | Jakarta - Batam |
| 7 Apr 2007 | Citi Visa | Batam - Jakarta |
| 14 Apr 2007 | Citi Visa | Jakarta - Batam |
| 21 Apr 2007 | Citi Visa | Batam - Jakarta |
| 24 Apr 2007 | Citi Visa | Jakarta - Batam |
| 30 Apr 2007 | Citi Visa/cash | Batam Fast Ferry - Batam - Singapore - Batam |
| 16 May 2007 | Citi Visa | Garuda - Batam |
| 29 May 2007 | Citi Visa/cash | Batam Fast Ferry - Batam - Singapore - Batam |
| 16 Jun 2007 | Citi Visa | Batam - Makassar |
| 20 Jun 2007 | Citi Visa | Makassar - Jakarta |
| 22 Jun 2007 | Citi Visa | Jakarta - Batam |
| 27 Jun 2007 | Citi Visa | Batam Fast Ferry - Singapore |
| 11 Jul 2007 | Citi Visa | Batam Fast Ferry - Singapore |

Note: The above list is not complete

CENTURY TRAVEL AGENCY INC                    INVOICE #006001030
SECOND FLOOR, CENTURY INCORAN L BLDG         DATE 04APRIL02
BEACH ROAD
SAIPAN
TELEPHONE: 670 235 0710                       SLAPP/NOEL MR
FAX      : 670 235 1711

SOLD TO AT0025
ALLIED MARINE

| SERVICE | DATE | FROM | TO | DEPART | ARRIVE |
|---|---|---|---|---|---|
| CONTINENTAL AIRLINES  04APR | MANILA | SAIPAN | 950P | 340A |
| CO 890 | TUESDAY | NINOY AQUINO I SAIPAN INTL | | 05APR |
| C BUSINESS | | AIRCRAFT: | BOEING 737-800 | | |
| | | FLIGHT OPERATED BY CONTINENTAL MICRONESIA | | | |
| CONTINENTAL AIRLINES  13APR | SAIPAN | MANILA | 615P | 755P |
| CO 895 | THURSDAY | SAIPAN INTL | NINOY AQUINO I | | |
| C BUSINESS | | AIRCRAFT: | BOEING 737-800 | | |
| | | FLIGHT OPERATED BY CONTINENTAL MICRONESIA | | | |

```
         AIR FARE 1340.00    TAX  7.00      AIR TOTAL USD      1347.00
                                            SERVICE FEE USD      67.00
                                            INVOICE TOTAL USD  1414.00

         PAYMENT: MSC AGTCHK
```

RESERVATION NUMBER(S)  CO/VK07S2

T/T :CO 005 2256303196

-FARE USD $1414.00
              PLS RECONFIRM YOUR FLIGHTS 72 HRS PRIOR TO
              DEPARTURE. FAILURE TO DO SO MAY CAUSE AUTO
                    CANCELLATION OF RESERVATIONS.
              PLS BRING NECESSARY TVL DOCS, PASSPORT, VISA,

# Exhibit 3

"Allied Marine Surveyors, Limited" <allied@itecnmi.com>
**07042415 - US Flag Deletion**
June 10, 2007 9:45:48 AM GMT+01:00
Robert Toelkes <rtoelkes@intbridgecorp.com>
"Allied Marine Surveyors, Limited" <allied@itecnmi.com>, Allied Verizon <allied@pticom.com>

Robert,

    Just to summarise our discussion, we will arrange for the name change of the "Martha E" and to be owned by a Panama company that is turn owned by our holding company, for your purposes and also for AMS to have some security for our accounts.

Kind Regards
Allied Marine Surveyors, Limited
Noel Slapp

*IMPORTANT NOTE: When responding to our messages, please include our reference number in the subject line, so that our spam filter will not throw your message into the garbage. We ask this because of the great number of spam messages that we receive. Thanks*

P.O. Box 5773 CHRB, Saipan, MP96950
Tel:      1 (670) 234 9511
Fax:      1 (670) 234 9512
24 Hour Pager:  1 (670) 236 1154
Website      http://www.alliedmarine.net

# Exhibit 4

## ıh Bank of Hawaii

# WIRE TRANSFER REQUEST

### ORIGINATOR INFORMATION

| NAME | PHONE NO | WIRE NO |
|---|---|---|
| ALLIED MARINE SURVEYORS, LTD. | 1670-234-9511 | |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| P.O. BOX 5271 CHRB | SAIPAN | MP | 96950 |

### TRANSACTION TYPE

☒ Single Transfer Only

☐ Repetitive Wire Transfers—authorization will be given separately for each transfer (Must have signed Wire Transfer Agreement form, EX-23, on file).

### BENEFICIARY (PAYEE) INFORMATION

| NAME | ACCOUNT NUMBER TO BE CREDITED |
|---|---|
| ABA ACCOUNTING SERVICES INC | 060-397585-001 |

| ADDRESS | OTHER BENEFICIARY INFORMATION (140 CHARACTER LIMIT) |
|---|---|
| P.O. BOX 0836-01170 | |

| CITY | STATE | ZIP CODE • COUNTRY |
|---|---|---|
| PANAMA | | REP OF PMA |

### BENEFICIARY (ACCOUNT WITH) BANK

| NAME | ABA ROUTING NO./SWIFT CODE | |
|---|---|---|
| HSBC BANK (PANAMA) S.A | ACCOUNT NO. 000141186 | |

| ADDRESS | BANK TO BANK INFORMATION (140 CHARACTER LIMIT) |
|---|---|
| | |

| CITY | STATE | ZIP CODE • COUNTRY |
|---|---|---|
| PANAMA | | REP OF PMA |

### INTERMEDIARY BANK (OPTIONAL)

| NAME | ABA ROUTING NO./SWIFT CODE | CITY | STATE | COUNTRY |
|---|---|---|---|---|
| HSBC BANK USA N A | ABA 021001088 | NEW YORK | NY | USA |

### PAYMENT

| VALUE DATE (MM/DD/YY) | AMOUNT OF TRANSFER (USD) | PROCESSING FEE | AMOUNT DUE FROM ORIGINATOR |
|---|---|---|---|
| July 03, 2007 | $1,380.00 | | $1,380.00 |

☐ FOREIGN CURRENCY TRANSFER

| FX CODE | RATE | FOREIGN AMOUNT |
|---|---|---|
| | | |

☐ CHARGE ADDITIONAL PAYING BANK FEES (IF APPLICABLE) TO ORIGINATORS ACCT
Originator agrees to pay all charges for full payment to beneficiary which will be determined by beneficiary bank once beneficiary is credited

| ORIGINATOR'S BANK OF HAWAII ACCOUNT NUMBER TO BE CHARGED |
|---|
| 0032-003142-0 |

### AGREEMENT

The Originator agrees that all wire transfers originated under this authorization will be governed by the Bank of Hawaii "Wire Transfer Agreement", as appended from time-to-time. The Wire Transfer Agreement appears on the second page of this form.

X _~signature~_ _(Originator Signature)_  ☐ EX-23 on File  X _____ _(Originator Signature)_

| Printed Name: | ROLAND ARANDA | Printed Name: | |
|---|---|---|---|
| Title: | ACCOUNTANT | Title: | |
| Date: | JULY 03, 2007 | Date: | |

| ACCEPTED BY (Sign & print name) | AUTHORIZED BY (Sign & print name) |
|---|---|

☐ CURRENT COLLECTED VERIFIED

| BRANCH/DEPT NAME AND COST CTR NO | BRANCH/DEPT. TELEPHONE NO | DATE |
|---|---|---|
| | | |

### CALLED & FAXED-IN ORDERS

| CUSTOMER/CALLER | ☐ RECEIVED BY FAX | CALL/FAX TAKEN & FORM PREPARED BY (Sign & print name) | DATE & TIME |
|---|---|---|---|
| CALL BACK TO | TELEPHONE NO | PERFORMED BY (Sign & print name) | DATE & TIME |

### WALK-IN ORDERS

| NAME | TIN OF PERSON PRESENT | ADDRESS (STREET ADDRESS, CITY, STATE, ZIP CODE) | |
|---|---|---|---|
| IDENTITY CARD (TYPE, NUMBER, ISSUER, EXPIRATION DATE) | | IDENTITY VERIFIED BY (Sign & print name) | DATE & TIME |
| CALL BACK TO | TELEPHONE NO | PERFORMED BY (Sign & print name) | DATE & TIME |
| CODE/TEST KEY | RECUR ID | VERIFIED BY FUNDS TRANSFER DEPT | DATE & TIME |
| ENTERED BY FUNDS TRANSFER DEPT | REFERENCE NUMBER | VERIFIED BY FUNDS TRANSFER DEPT | DATE & TIME |

FAXED
7-3-07
10:00

Allied <allied@pticom.com>
**Re: 07062730 - Tamara Holdings**
3 July 2007 07:48:01 GMT+01:00
Yvonne Arias <yarias@abalaw.net>
Allied Marine <allied@itecnmi.com>
1 Attachment, 253 KB

Dear Yvonne,

Further to Noel's message to you of 30th June, please be advised that we remitted the funds in the amount of US$1,380.00 to ABA Accounting Services Inc. for the payment of invoice no. 12172. Please see attached Wire Transfer Request for your reference.

Thank you and best regards,

Roland Aranda
Allied Marine Surveyors, Ltd.

On Jun 30, 2007, at 3:00 PM, Allied Marine wrote:

> Yvonne,
>
> Thank you very much for your assistance. Roland will remit funds to you asap.
>
> Kind Regards
> Allied Marine Surveyors, Limited
> Noel Slapp
>
> *IMPORTANT NOTE: When responding to our messages, please include our reference number in the subject line, so that our spam filter will not throw your message into the garbage. We ask this because of the great number of spam messages that we receive. Thanks*
>
> P.O. Box 5773 CHRB, Saipan, MP96950
> Tel:        1 (670) 234 9511
> Fax:        1 (670) 234 9512
> 24 Hour Pager:    1 (670) 236 1154
> Website        http://www.alliedmarine.net
>
> On 30 Jun 2007, at 12:37 AM, Yvonne Arias wrote:
>
>> Dear Noel
>>
>> Further to my previous message, I am pleased to confirm that the incorporation deed of VT HOLDINGS INCORPORATED has been registered in Microjacket 573671, Document 1160745 of the Panama Public Registry's Mercantile Section. We shall shortly send you all relevant documents by courier.
>>
>> Kind regards,
>>
>> Yvonne Arias
>> •••••••••••••••••••••••••••••••••••••••••
>> ARIAS B. & ASSOCIATES
>> Attorneys-at-law
>> Banco General Tower, 15th Floor
>> Aquilino de la Guardia Street, Marbella
>> P.O. Box 0816-01110
>> Panama 5, Republic of Panama
>> Tel (507) 265-8303/04/05
>> Fax (507) 265-4402/03
>> e-mail: info@abalaw.net
>>
>>
>> **From:** Yvonne Arias [mailto:yarias@abalaw.net]
>> **Sent:** Viernes, 29 de Junio de 2007 03:39 p.m.
>> **To:** 'Allied Marine'
>> **Cc:** 'Allied Verizon'
>> **Subject:** RE: 07062730 - Tamara Holdings
>>
>> Dear Noel:
>>
>> I refer to your instructions of today and am pleased to confirm that we have arranged the incorporation of VT HOLDINGS INCORPORATED by means of Public Deed no. 5.896 executed before the Eleventh Notary Public of the Circuit of Panama. The incorporation deed has been submitted to the Panama Public Registry and we will revert with the registration particulars as soon as they are available. In the meantime, I am pleased to attach herewith a copy of our invoice no. 12172.
>>
>> Kind regards,
>>
>> Yvonne Arias
>> •••••••••••••••••••••••••••••••••••••••••
>> ARIAS B. & ASSOCIATES
>> Attorneys-at-law

"Clive C Johnston" <cjohnston@intbridgecorp.com>
**RE: Tracking no. for pouch.**
29 June 2007 09:33:12 GMT+01:00
"'Allied Marine'" <allied@itecnmi.com>

The papers I have received are a request for Transfer/change of registry and Certificate of documentation. I suppose they need to be onward delivered to you?

Cheque for Sing$100,000 issued this afternoon and Eng Lee Shipping requested to uplift it today.

Clive

Allied Marine [mailto:allied@itecnmi.com]
**Sent:** 29 June 2007 15:59
**To:** Betty Jo Willes
**Cc:** Allied Marine; Allied Verizon; Clive Johnson
**Subject:** Re: Tracking no. for pouch.

Hello Betty Jo,

Is this the MARAD form for changing registration of "Tamara"?

Kind Regards
Allied Marine Surveyors, Limited
Noel Slapp

*IMPORTANT NOTE: When responding to our messages, please include our reference number in the subject line, so that our spam filter will not throw your message into the garbage. We ask this because of the great number of spam messages that we receive. Thanks*

P.O. Box 5773 CHRB, Saipan, MP96950
Tel: 1 (670) 234 9511
Fax: 1 (670) 234 9512
24 Hour Pager: 1 (670) 236 1154
Website http://www.alliedmarine.net

On 29 Jun 2007, at 2:40 AM, Betty Jo Willes wrote:

Clive,
Here is the tracking no for pouch coming to you from Robert. DHL tracking no. 826-0725-185 it was sent out on 6/28/07. Also can you email us back a completed copy when you done.
Regards,
Betty Jo Cruz
International Bridge & Construction Marianas, Inc
Tel: (671) 653-4026
Fax: (671) 653-4032
E-Mail: bwilles@intbridgecorp.com

# Exhibit 5

"Dianne Mayo" <dmayo@intbridgecorp.com>
**Payment Authorization**
5 April 2008 03:33:09 GMT+01:00
"'Allied Marine Surveyors, Limited'" <allied@itecnmi.com>
<dmayo@intbridgecorp.com>
1 Attachment, 27.0 KB

Good day Noel,

Bad news...still has not been able to find James and the Coast Guard has suspended the search.

The Underwriters are requesting the attached letter from VT holdings in order to process our settlement payment.

Can you please have them put on VT letterhead and email back to us as soon as possible. Also, please advise on how to make payment to VT Holdings. Do you want a check issued or a wire transfer? If transfer, please provide the banking details.

Thank you and regards,
**Dianne L. Mayo**
**International Bridge & Construction Marianas, Inc.**
**Post Office Box 21149;**
**GMF, Guam 96921**
**Tel: (671) 653-4026**
**Fax: (671) 653-4032**
**Email: dmayo@intbridgecorp.com**

Tamara V pa...doc (27.0 KB)

---

April 5, 2008

**To the Underwriters concerned in respect of:**

|  |  |
|---|---|
| **Policy Details / Number:** | 07H01093 |
| **Vessel** | "Tamara V" |
| **Casualty and date** | Vessel ran aground on reef 04.12.2007 |

We hereby authorize you to pay your respective proportions of the above claim to **ROPNER INSURANCE SERVICES LTD** and we agree that such payment, whether in account or otherwise, shall be a complete discharge to the Underwriters concerned for amounts so paid.

We further agree that payment in turn by **ROPNER INSURANCE SERVICES LTD** to **AM INSURANCE** whether in account or otherwise, shall be a complete discharge to **ROPNER INSURANCE SERVICES LTD** for amounts so paid.

We further agree that payment in turn by **AM INSURANCE** to **INTER BAY CIRCLE MARINE** whether in account or otherwise, shall be a complete discharge to **AM INSURANCE** for amounts so paid.

Signed :_____

Dated :_____

"Arias B. & Associates" <info@abalaw.net>
**RE: 08032520 - Charter Party**
15 April 2008 18:37:09 GMT+01:00
"'Allied Marine Surveyors, Limited'" <allied@itecnmi.com>
"'Allied Verizon'" <allied@pticom.com>
1 Attachment, 29.1 KB

Dear Noel:

As requested, attached please find a copy oft he signed Payment Authorization. We have left it undated and trust this is in order.

Kind regards,

Juan Ramon Ramirez
*********************************
ARIAS B. & ASSOCIATES
Attorneys-at-law
Banco General Tower, 15th floor
Aquilino de la Guardia Street, Marbella
P.O. Box 0816-01110
Panama 5, Republic of Panama
Tel. (507) 265-8303/04/05
Fax (507) 265-4402/03


**From:** Allied Marine Surveyors, Limited [mailto:allied@itecnmi.com]
**Sent:** Lunes, 14 de Abril de 2008 07:51 p.m.
**To:** Arias B. & Associates
**Cc:** Allied Marine Surveyors, Limited; Juan Ramon Ramirez; Allied Verizon
**Subject:** Re: 08032520 - Charter Party
**Importance:** High

Hello Juan.

We confirm receipt of the FEDEX package with original CP and invoices. We are processing the invoices.
Please refer to our message of 10 April which enclosed a new attachment for signing - Payment Authorisation. We reattach it here for your convenience. Please email a signed copy back to us as a matter of urgency. Thanks &

3

Payment
Authority

TO:    To the Underwriters concerned in respect of:
       Policy Details / Number:          071 I01093
FROM:VT Holdings, Incorporated
DATE: 09 April 2008
SUBJECT:   " Tantora 'I' Vessel ran aground on mel 04.12.2007

5th Floor, Room 502,
Paragon Tower
531 A. Flores Street,
Lerma, Manila,
Philippine Islands

We hereby authorize you to pay your respective proportions of the above claim to ROPNER
INSURANCE SERVICES LTD and we agree that such payment, whether in account or other-
wise, shall be a complete discharge to the Underwriters concerned for amounts so paid.

We further agree that payment in turn by ROPNER INSURANCE SERVICES LTD to AM INSUR-
ANCE whether in account or otherwise, shall be a complete discharge to ROPNER INSURANCE
SERVICES LTD for amounts so paid.

We further agree that payment in turn by AM INSURANCE to INTER BAY CIRCLE MARINE
whether in account or otherwise, shall be a complete discharge to AM INSURANCE for amounts
so paid.

Signed
VT Holdings

Eric Guevara Villaronta

Dated

# Exhibit 6

"Dianne Mayo" <dmayo@intbridgecorp.com>
**RE: 08041610 - Payment Authorisation** 
17 April 2008 00:03:58 GMT+01:00
"'Allied Marine Surveyors, Limited'" <allied@itecnmi.com>
<dmayo@intbridgecorp.com>

Yes, thank you. I received and forwarded to Underwriters.

**Dianne L. Mayo
International Bridge & Construction Marianas, Inc.
Post Office Box 21149;
GMF, Guam 96921
Tel: (671) 653-4026
Fax: (671) 653-4032
Email: dmayo@intbridgecorp.com**

**From:** Allied Marine Surveyors, Limited [mailto:allied@itecnmi.com]
**Sent:** Thursday, April 17, 2008 12:20 AM
**To:** Dianne Mayo
**Cc:** Allied Verizon; Allied Marine Surveyors, Limited
**Subject:** Re: 08041610 - Payment Authorisation

Hello Dianne,

    Please confirm receipt.

Kind Regards
Allied Marine Surveyors, Limited
Noel Slapp

*IMPORTANT NOTE: When responding to our messages, please include our reference number in the subject line, so that our spam filter will not throw your message into the garbage. We ask this because of the great number of spam messages that we receive. Thanks*

| | |
|---|---|
| Postal Address | P.O. Box 5773 CHRB, Saipan, MP96950 |
| Physical Address | Garapan Village, Saipan, MP(6950 |
| Tel: | 1 (670) 234 9511 |
| Fax: | 1 (670) 234 9512 |
| 24 Hour Pager: | 1 (670) 236 1154 |
| E-mail: | allied@itecnmi.com |
| | allied@saipan.com |
| | allied@pticom.com |
| Website | http://www.alliedmarine.net |

On Apr 16, 2008, at 1:38 AM, Allied Marine Surveyors, Limited wrote:

Hello Dianne,

    We received this by e-mail ...... finally. We received the original Charter Party and invoices by courier yesterday. We'll forward the invoices on shortly.

Kind Regards
Allied Marine Surveyors, Limited
Noel Slapp

*IMPORTANT NOTE: When responding to our messages, please include our reference number in the subject line, so that our spam filter will not throw your message into the garbage. We ask this because of the great number of spam messages that we receive. Thanks*

Postal Address    P.O. Box 5773 CHRB, Saipan, MP96950

# Exhibit 7

발행번호  2-320-2011-3159

# 사 건 처 분 결 과 증 명 서

| | | |
|---|---|---|
| ① 사 건 번 호 | | 부산지방검찰청 2010 형제 96886호 |
| 피의자 | ② 성        명 | 슬랩노엘로버트 |
| | ③ 주민등록번호 | 560815-5000000 |
| | ④ 주        소 | 국외 이하 기재생략 |
| ⑤ 죄        명 | | 별지 참조 |
| 처분 | ⑥ 년 월 일 | 2011.02.11 |
| | ⑦ 요      지 | 별지 참조 |
| ⑧ 송치관서 및 수 사 단 서 | | (재기) |
| ⑨ 용      도 | 법원제출용 | ⑩ 신 청 인    송대원 |

위와같이 처분되었음을 증명합니다.

2011. 3. 8.

# 부 산 지 방 검 찰 청 검 사 장

문서확인번호   2129-9564-9622-4800

발행번호   2-320-2011-3159

[죄 명]

가.횡령

나.위계공무집행방해

다.업무방해


[처분요지]

가,나,다-혐의없음(증거불충분)

Document Confirmation No. 2129-9564-9622-4800

Issue No. 2-320-2011-3159

# Certificate of Case Disposition Results

| | (1) Case No. | Busan District Public Prosecutor's Office 2010HYUNGJAE96886 |
|---|---|---|
| Suspect | (2) Name | Slapp, Noel Robert |
| | (3) Resident Registration No. | 560815-5000000 |
| | (4) Address | Foreign, the rest of entry is omitted |
| (5) Name of Crime | | Refer to annex |
| Disposition | (6) Year Month Day | 2011.02.11 |
| | (7) Summary | Refer to annex |
| (8) Transferring Office and Investigation Basis | | (Re-open) |

| (9) Purpose | For submission to court | (10)Applicant | Song Dae Weon |
|---|---|---|---|

Disposition as in the above is hereby certified.

2011. 3. 8.

BUSAN DISTRICT PUBLIC PROSECUTOR'S OFFICE CHIEF PROSECUTOR (SEAL)

Document Confirmation No. 2129-9564-9622-4800

Issue No. 2-320-2011-3159

[Name of Crime]

a.  Misappropriation
b.  Deceptive Obstruction of Performance of Official Duties
c.  Interference with Business

[Disposition Summary]

a, b, c – No charges (insufficient evidence)

# Exhibit 8



## INTER BAY CIRCLE MARINE

**IBCM**
P.O. BOX 21149 • GMF, GUAM 96921
TEL.: (671) 653-4026 • FAX (671) 653-4031

October 21, 2009

National Vessel Documentation Center
U. S. Department of Homeland Security
United States Coast Guard
792 T J Jackson Drive
Falling Waters, WV 25419-9502

Reference:    MARTHA E ⟷ Official Number 1173051

Dear Sir or Madam:

We hereby submit our renewal certification for the freight barge MARTHA E. The certificate of
documentation has been expired since July 31, 2007. We did not renew the certification because the
barge was out of service.

If you have any questions, please contact us.

Sincerely,

William E. Toelkes
President

**FAXED**

OCT 2 1 2009

U.S. DEPARTMENT OF
HOMELAND SECURITY
U.S. COAST GUARD
(SUBSTITUTE) CG-1280 (REV. 06/04)

OMB APPROVED 1625-0027
EXPIRATION DATE:

## RENEWING ENDORSEMENTS ON A CERTIFICATE OF DOCUMENTATION

Vessel owners are required to renew the endorsement(s) on Certificates of Documentation each year. Failure to renew the endorsement(s) may result in the vessel being removed from documentation. Operation of a vessel with expired endorsements may result in a civil penalty.

If the vessel has been lost, sold, abandoned, destroyed, or placed under state numbering, the vessel owner must notify the National Vessel Documentation Center in writing. If the Certificate of Documentation is available, it must be surrendered. If any of the information shown on the Certificate of Documentation, other than the address of the owner, has changed, please contact the National Vessel Documentation Center for advice on how to proceed. The toll free telephone number is 1 800 799-8362.

The endorsement(s) may be renewed by completing the substitute form CG-1280 which is published below. The Certification may be sent by facsimile mail to the National Vessel Documentation Center at (304) 271-2405. Although facsimile submissions are preferred, the Certification may be mailed to the National Vessel Documentation Center, 792 T J Jackson Drive, Falling Waters, WV 25419.

## RENEWAL CERTIFICATION

I CERTIFY THAT THE RECITATIONS CONCERNING VESSEL NAME, TONNAGE, DIMENSIONS, PROPULSION, OWNERSHIP, HAILING PORT, RESTRICTIONS, ENTITLEMENTS AND ENDORSEMENTS, CONTAINED IN THE CERTIFICATE OF DOCUMENTATION REMAIN ABSOLUTELY THE SAME. .

NAME(S) *AND OFFICIAL NUMBER(S)* OF VESSELS COVERED BY THIS CERTIFICATION: (May be listed on an attachment if necessary)

MARTHA K      **Official Number 1173051**

OWNER'S ADDRESS (IF CHANGED FROM ADDRESS SHOWN ON CERTIFICATE OF DOCUMENTATION)
Inter Bay Circle Marine
P. O. Box 21149, Barrigada, Guam 96921

| | | |
|---|---|---|
| *[signature]* | President | 10/21/09 |
| Authorized Signature | Capacity of Person Signing | Date |

AN AGENCY MAY NOT CONDUCT OR SPONSOR, AND A PERSON IS NOT REQUIRED TO RESPOND TO A COLLECTION OF INFORMATION UNLESS IT DISPLAYS A VALID OMB CONTROL NUMBER.

THE COAST GUARD ESTIMATES THAT THE AVERAGE BURDEN FOR THIS FORM IS 5 MINUTES. YOU MAY SUBMIT ANY COMMENTS CONCERNING THE ACCURACY OF THIS BURDEN ESTIMATE OR MAKE SUGGESTIONS FOR REDUCING THIS BURDEN TO: U.S. COAST GUARD, NATIONAL VESSEL DOCUMENTATION CENTER, 792 T J JACKSON DRIVE, FALLING WATERS, WEST VIRGINIA 25419, OR OFFICE OF MANAGEMENT AND ... DACEPWORK REDUCTION PROJECT (1625-0027) WASHINGTON DC 20503